# CHARLESTON.

## HALL *v.* NORFOLK & W. R. CO.

### Submitted June 16, 1897—Decided November 20, 1897.

1. PENAL STATUTES.
   A penal statute is one which imposes a forfeiture or penalty for transgression of its provisions, or for doing a thing prohibited. (p. 39).

2. PENAL STATUTES—*Construction.*
   Penal statutes must be construed strictly. (p. 39).

3. PENALTY—*Punishment—Civil Action—Criminal Action.*
   A penalty is in the nature of punishment for the non-performance of an act, or for the performance of an unlawful act, and involves the idea of punishment, whether enforced with a civil or criminal action or procedure. (p. 40).

4. RAILROADS—*Rates—Master and Servant.*
   A railroad company is not liable for the penalty of five hundred dollars for overcharge of freight or passenger rates, under clause 5, chapter 54, page 559, Code 1891, for the mere charge of it by a conductor, unless the company authorized or approved the act. (p. 41).

Error to Circuit Court, Mercer County.

Action by one Hall against the Norfolk and Western Railroad Company. Plaintiff had judgment. Defendant brings error.

*Reversed.*

A. W. REYNOLDS and JOHNSTON & HALE, for plaintiff in error.

BRANNON, JUDGE:

Hall brought an action of debt against the Norfolk and

Western Railroad Company to recover the fixed penalty of five hundred dollars imposed upon railroads by clause 5, chapter 54, s. 82, Code 1891, for overcharge of rates, and recovered judgment, and the company sued out this writ of error.   The first question of decisive importance is whether the act of the conductor in making the alleged overcharge binds the company, in the absence of evidence that it was ordered or ratified by it.   It is clear that the principal is liable for a tort done by its agent, in an action for the recovery of damages to compensate one injured by such tort, when committed in the course of the agent's employment, though the principal did not authorize, participate in, or ratify the act, and though it was done without his authority, and even against his orders.   This liability is based, not on the idea of the agent's authority, but on public policy.   One without fault is hurt by another's agent in the course of the principal's business, and that principal must make reparation.   The test is whether the act was done in the course of the performance of the principal's business, not whether the agent had authority to do the act.   1 Am. & Eng. Enc. Law (2d Ed.) 1151; 1 Elliott, R. R. §§ 213, 214; *Gregory's Adm'r* v. *Railroad Co.*, 37 W. Va., 606, (16 S. E. 819); *Gillingham* v. *Railroad Co.*, 35 W. Va., 588, 592, (14 S. E. 243).   It is different in cases of contract.   The act must be within the authority, there.   It is also clear that, while the principal is liable civilly for the acts of the agent, he is not liable criminally.   He is liable for acts civil in their nature, not those criminal or penal in nature, unless done by his authority or assent, or approval.   1 Am. & Eng. Enc. Law (2d Ed.) 1161; Lewis' Case 4 Leigh, 664.   Such being the law, what is the cast of the act done by the conductor in this case, if it was done? If an overcharge in passenger or freight rates is made by a railroad company, the act is made a misdemeanor by clause 15a, Code, p. 565, with very severe punishment; and for the act an indictment lies, and the fine goes to the State. For the very same act a penalty of five hundred dollars is given the party aggrieved, by clause 5, in addition to the fine to the State, and in addition to the right to recover the amount of excessive charge collected by the company, as this penalty is cumulative, and does not deprive the party

of his civil action for money had and received in wrong. 4
Elliott, R. R. § 1564; 8 Am. & Eng. Enc. Law, 934; Hutch.
Carr. § 756b.   Thus, for mere compensation the wronged
party has his civil action for money had and received for
his wrong, and also a right to demand the five hundred dol-
lar penalty.   They are in their · nature different things.
No one would say that upon an indictment for the misde-
meanor the act would be treated otherwise than a criminal
act.   The very same act carries with it a penalty of five
hundred dollars to the individual, not for compensation to
him to redress his actual loss, but purely for punishment.
In this case Hall was overcharged, if at all, only thirty-
eight cents, on a ride of four miles; and of course, the pen-
alty is not for compensation, but punishment.   The act
thus has two punitive penalties, one to the State, and the
other to the individual, for one and the same act, which is
a public wrong entailing two penalties.   You cannot make
two civil actions for compensating the party out of that act,
but you can, out of one act of public wrong, make two pen-
alties.   The defendant has been held liable for the crime
of its conductor, when it neither ordered it, nor ratified it,
nor knew of it, but the act was against its published rates,
and in violation of its directions to the conductor to collect
only lawful fares by the tariff rates furnished him.   If he
did that act, he did it by mistake, or in violation of orders.
I take it that the legislature did not intend to punish the
corporation, if innocent, with such severe penalties.   I can
readily see that it is just and good policy to thus punish a
railroad company for such wrong, if done by its authority
or with its approval; but we ought not to give that liberality
of construction to the statute which imposes such injus-
tice, because it is a highly penal statute, and its words do
not make the company liable for unauthorized acts of
agents, nor does reason or justice call for it; and penal
statutes are to be strictly construed, and applied only to
cases plainly within them and their reasonable intent.   Un-
der this principle, it must be shown that the company or-
dered or approved the act, as it was held that the com-
pany must have approved running cars on Sunday, or au-
thorized it, to make it liable for the penalty fixed for such
act.   *State* v. *Baltimore & Ohio R. Co.*, 15 W. Va., 362,

389. There the acts of its officers did not bind it for the penalty, because it did not appear that the company authorized or approved the act. That case settles this one in favor of the defendant.

The latest work on railroads, of high and standard authority (Elliott, R. R. § 715), says: "On the other hand, it is held that statutes relating to criminal offenses, and all statutes which impose as punishment any penalties, pecuniary or otherwise, or forfeitures of money or other property, or which provide for the recovery of damages beyond just compensation to the party injured, either recovered in a suit by the state, or a private individulal, are penal, in the sense that they fall under the rule of strict construction. This is the only doctrine that can be defended on principle." Statutes of the character involved in this case, imposing penalties for overcharges have been held penal, and subject to rigid construction. *Hines* v. *Railroad Co.*, 95 N. C., 434; *Louisville & N. R. Co.* v. *Com.* (Ky.) 35 S. W. 129. So a statute giving a penalty for leaving a gate swinging open over a highway was held penal in *Allen* v. *Stevens*, 29 N. J. Law, 509. In *Brooks* v. *Telegraph Co.*, 56 Ark. 224, (19 S. W. 572) an act imposing a penalty for refusing to transmit telegrams over the line was held penal, and not to include the act of refusing to deliver a telegram after its transmission. The opinion very appropriately says (what is applicable to this case) that: "The statute is penal, and its terms cannot be extended beyond their obvious meaning. Where there is a doubt, such an act ought not to be construed to inflict a penalty which the legislature may not have intended. This is a familliar rule of construction. Applied to this case, it resolves the question in favor of the company, for it cannot be said that the language plainly implies the intention to visit a penalty for a refusal to deliver a message after it had been transmitted." All penal statutes are construed strictly, and not "extended by mere implication to include cases or acts not clearly described by the words." 23 Am. & Eng. Enc. Law, 374, 375; 18 Am. & Eng. Enc. law, 270. "Penal statutes are those by which punishments are imposed for transgression of the law. They are construed strictly, and more or less so according to the severity of the pen-

alty. When a law imposes a punishment which acts upon the offense alone, and not as a reparation to the party injured, and where it is entirely within the discretion of the lawgiver, it will not be presumed that he intended it should extend further than his expression; and humanity would require that it should be so limited in construction." Suth. St. Const. § 208. It does not make the statute any the less penal that the penalty is enforced by an action in form civil. That matter relates only to the procedure. A penalty "is in the nature of punishment for the nonperformance of an act or for the performance of an unlawful act. It involves the idea of punishment, whether enforced by a civil or criminal procedure." And. Law Dict. 763 quoted in an excellent case on the subject, *Woolverton* v. *Taylor*, 132 Ill. 197, (23 N. E. 1007) End. Interp. St. § 331, says: "It is immaterial, for the purpose of the application of the rule of strict construction, whether the proceedings for the enforcement of the penal law be criminal or civil. Thus, an act giving a party injured a civil action for the recovery of a penalty imposed upon a public officer for charging illegal fees is a penal act; so that the taking of excessive fees by a person, after the expiration of his office, for service done while in office, is beyond the reach of the act." In Virginia the statute against usury has been several times held to be penal requiring proof beyond rational doubt. *Brockenbrough* v. *Spindle*, 17 Grat., 21, 33.

I think that my construction of clause 5 is strengthened by looking at clauses 15 and 15a, as all are in *pari materia*, and in the same act Clause 15 enacts that any willful violation of the act by any railroad corporation shall be deemed a forfeiture of its franchise. Would any reasonable person say that a paltry overcharge of thirty eight cents, as in this case, by a conductor, without authority or approval of the company, would visit upon it the dreadful penalty of forfeiture of its franchise? You would not, by liberal construction, do this. Then why, for the very same act, impose the heavy penalty of five hundred dollars to the individual, not for compensation, but for punishment? Clause 15a enacts that "any railroad company or corporation, * * * their officers or agents, who shall charge, demand, or receive more than the lawful charges, for trans-

portation or travel upon their railroad, shall 'for each of-
fence be guilty of a misdemeanor, and upon conviction
shall be fined not less than one hundred dollars or more
than five hundred dollars." That means that, where the
corporation authorizes it, it shall be liable, but where it is
the unauthorized act of the agent, he is liable. The agent
or officer is not liable to the five hundred dollar penalty
under clause 5,—he is not mentioned there; and, to im-
pose it on the corporation, it must be authorized, or ap-
proved. It must be its willful act, like the act required
under clause 15, to lose its franchise. · Indeed, it may be a
question whether any officer's unauthorized act, whether
he be high or low, could subject a corporation to these
severe penalties,—whether it would not require company
action, or action by some one authorized to fix rates, to
bind the company, for a mere subaltern could not.

Under these principles, error was committed, prejudi-
cial to the defendant, upon the trial, in giving plaintiff's in-
structions 1 and 2,—the former telling the jury that it was
not incumbent upon the plaintiff to prove his case beyond
a reasonable doubt, but by a mere preponderance of the
evidence; the latter stating that the mere collection of
sixty cents by the conductor rendered the company liable.
And error was committed in refusing defendant's in-
structions 1 and 3,— the former instructing that if the
conductor collected sixty cents, and the company had a
schedule of rates for the government of its conductors in
collecting fares from passengers, and a duplicate of it was
furnished to the conductor, and it was against the rules
of the company for the conductor to charge the plaintiff
more than the rates fixed by said schedule, and if said
rates were not more than the law allowed, then the jury
must find for the defendant; and No. 3 instructing that,
before the jury could find for the plaintiff, they must be-
lieve from the evidence, to the exclusion of every reason-
able doubt, that the company charged the plaintiff more
than was allowed by law, and that notwithstanding the con-
ductor charged sixty cents, which was more than the law
allowed, if the jury believed that the rules of the company
did not allow the conductor to charge the plaintiff more
than was allowed by law, and that he acted in violation of

the rules of the company, the act of the conductor was not the act of the company. The court erred in not setting aside the verdict of the jury, as there was no evidence tending to show that the company authorized or ratified the act, and, on the contrary, it was clearly shown to be against the rules of the company. I think that there was no error in rejecting pleas 1 and 2, fixing one year as a limitation. If any statute applied, it would be five years, under Code 1891, c. 104, s. 12. Reversed and new trial granted.

*Reversed.*