G. W. ELLIS, Respondent, v. W. J. MANSFIELD, Appellant.*

In the Kansas City Court of Appeals, December 3, 1923.

1. **APPEAL AND ERROR:** On Appeal by Defendant, Where it is Contended Peremptory Instruction Should Have Been Given, Testimony Must be Considered in Most Favorable Light to Plaintiff. On appeal by defendant, where it is contended peremptory instruction should have been given, testimony of defendant and plaintiff, together with all reasonable inferences that may be drawn therefrom, must be taken in most favorable light to plaintiff.

2. **ACCORD AND SATISFACTION:** Tender of Check to Creditor on Condition it is Full Payment of Unliquidated Claim, the Cashing

of Check under Protest by Creditor is Held to be an Accord and Satisfaction. Where a claim is unliquidated and debtor tenders a check on condition that it is full payment of amount due, and creditor cashes it, there is accord and satisfaction, although the creditor protests that he does not take the check in full payment, but is merely giving the debtor credit for the amount.

3. ———: Where Amount Due is Undisputed, Naked Agreement to Accept Less Sum in Discharge of Whole Will not be Binding. If a claim is definite and undisputed as to sum due, a naked agreement to accept a less sum in discharge of the whole will not be binding for lack of consideration; such being the rule whether creditor accepted the payment as one in full or not.

4. BROKERS: Evidence Held not to Show That Efforts of Broker Were not Procuring Cause of Sale. In a suit by broker to recover balance owing as commission, evidence *held* not to show, as a matter of law, that efforts of broker were not procuring cause of sale.

5. INSTRUCTIONS: Where Error in Instruction was Joined in by Defendant in Use of Similar Language in One of His Instructions, He Could not Complain. In an action by broker for commission, if the use of the words "produce a purchaser" in an instruction, submitted to jury a mixed question of law and fact, in that jury were not told what the legal requirements of procuring a purchaser were, and the same was error, the defendant cannot complain as error was joined in by defendant in one of his instructions containing similar language.

6. ———: Words "Produce a purchaser" in Instruction Held not Technical and That There was not Submitted Thereby a Mixed Question of Law and Fact. The use of the words "produce a purchaser" in an instruction are not technical words and jury needed no definition of them, and in the use thereof there was no submission of a mixed question of law and fact.

7. ———: Instruction Held not to Withdraw Question of Accord and Satisfaction. In a suit to recover commission where defense was a plea of accord and satisfaction, and court in authorizing a recovery for plaintiff, gave an instruction which read, "provided, however, that plaintiff did not receive the sum of $930.06 in full payment of his claim, as explained in other instructions, *held* in view of issues and other instructions, the question of accord and satisfaction was not withdrawn from jury thereby.

8. ———: Instruction Held not Comment on Evidence or Argumentative. An instruction which authorized a recovery, provided plaintiff did not receive the sum alleged in full payment of his claim. as explained in other instructions, the use of the word "provided"

therein *held* not an improper comment upon the evidence or argument, and did not tell the jury that the $930.06 was not received in full payment of the claim.

9. ———: **Jury Held to Have Understood Words "in Full Payment" Used in Instruction, as Meaning "in Full Satisfaction."** In view of plain issues in case and other instructions, it is *held* that jury well understood that the words "in full payment" were the same as "in full satisfaction," if they do not mean that upon their face.

10. **EVIDENCE: Witnesses: Matters Inquired About on Cross-Examination May be Fully Gone into on Redirect Examination.** Where defendant went into matter first on cross-examination of plaintiff, he could not complain of the admission of similar evidence brought out by plaintiff's redirect examination.

*Headnote 1. Appeal & Error, 4 C. J., Section 2872; 2. Accord & Satisfaction, 1 C. J., Section 85; 3. Accord & Satisfaction, 1 C. J., Section 40; 4. Brokers, 9 C. J., Section 129; 5. Appeal & Error, 4 C. J., Section 2620; 6. Trial, 38 Cyc, p. 1686; 7. Accord & Satisfaction, 1 C. J., Section 158; 8. Trial, 38 Cyc, p. 1653 (1926 Anno); 9. Appeal & Error, 4 C. J., Section 2717; 10. Witnesses, 40 Cyc, p. 2522.

Appeal from Circuit Court of Jackson County.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*Walter W. Calvin* for respondent.

*Burns & Watts* for appellant.

BLAND, J.—This is an action to recover the balance due on a commission in the sale of an 160 acre farm located in Anderson county, Kansas. The answer consists of a general denial and a plea of accord and satisfaction. It also includes a counterclaim for $125 and interest. The counterclaim is not now in dispute. There was a verdict and judgment for plaintiff in the sum of $1037.01 and for defendant on his counterclaim in the sum of $139.36. Defendant has appealed.

As defendant's main contention is that the court should have given his peremptory instruction to find for him, it is necessary for us to state the evidence in its most favorable light to plaintiff. This evidence shows

that the land was owned by defendant, who lived in Kansas City, Missouri, and one Triplett, who lived in Garnett, Anderson County, Kansas; that defendant told plaintiff to go to Garnett and see Triplett and look at the farm, that defendant wanted to sell it and would give plaintiff one-third of the net sale price above $8800, the cost of the farm. Plaintiff went to Garnett, met Triplett, saw the farm, came back to Kansas City, made a second trip to Garnett, again saw Triplett and the farm, and then went into a restaurant at Garnett with Triplett to eat dinner. There he overheard one Kniseley, who afterwards became the buyer of the property, talking to a man about buying a farm. Plaintiff went over and introduced himself to Kniseley and then introduced Triplett. Plaintiff testified that he was the first one to mention the farm to Kniseley on this occasion. Kniseley told plaintiff when the latter attempted to get him interested in the farm that he had seen all the land in that vicinity and that it was unsuitable for his needs in that he was in the cattle business and had to have water. Plaintiff told him that this farm had a windmill upon it which furnished plenty of water and then quoted Kniseley the price per acre of the farm. This seemed to interest Kniseley. Kniseley said that the farm was not large enough and plaintiff sent Triplett out to find out from the man who owned the eighty acres adjoining as to what he would take for it. Triplett returned with the information. Plaintiff induced Kniseley to stay over in Garnett and look at the farm. Plaintiff, Triplett and Kniseley drove to the farm and plaintiff and Kniseley walked over it and examined it. They returned to Garnett and plaintiff and Kniseley were together until train time when they both took the train, plaintiff coming to Kansas City and Kniseley getting off at Ottawa. Plaintiff did not see Kniseley again until after the deal was closed by Triplett with Kniseley. Plaintiff came to Kansas City and informed defendant that he had found a purchaser of the land, giving Kniseley's name.

Defendant's evidence tended to show that Triplett's efforts were the procuring cause of the sale. Kniseley, testifying for the defendant, stated that he had heard that Triplett had the farm for sale before he met plaintiff and Triplett at Garnett, but he did state that plaintiff first priced the farm to him although Triplett met him first and was the first to mention the farm.

According to plaintiff's testimony it was agreed that plaintiff should have one-third of the net profits of the sale of the farm, Triplett one-third and defendant one-third. The net profit was $5580.36, plaintiff's share being $1860.12. After the deal was closed, plaintiff demanded of defendant his share at defendant's office in Kansas City. Defendant refused to give plaintiff the full amount claimed by him but, as testified to by plaintiff:

". . . he spoke about $930.06 being my part. I says, "How do you get that?" "Well, he says, Ain't we fifty-fifty on commission?" I says, "Yes, but you got your fifty didn't you, you took your eighteen hundred and something out." He says, "Yes, but half of yours is mine." I says, "I don't know how you figure it, this is to be split three ways, Triplett has got his, you have got yours and now you are going to take half of mine. No, you wont do me that way." He said that was the best he could do and I said, "Then you wont do anything." I said, "I'll get it a different way" and this argument came up.

"Q. Now, you may state whether or not you were declining to take the check made out there. A. I certainly was, I told him I wouldn't take it."

After this conversation defendant told his clerk to make out a check for $1000.06, which included the $930.06 and $70 which had been advanced by plaintiff to reimburse a tenant on the place for certain things not necessary to mention here. Defendant then left the office, saying he would be back in twenty minutes. Plaintiff and his sons who were with him waited an hour but defendant did not come back. Plaintiff then took the check, examined it to find out if it was marked "paid in

full'' and finding that it was not, he had it certified by the bank and afterwards cashed it. Plaintiff testified that he did not take the check in full payment of his claim but, to the effect, that he took it as a credit on the amount he claimed was due him.

There is conflict in the evidence as to whether, at the time plaintiff accepted the check, there was a notation on its face to the effect that it was payment in full. The check introduced in evidence showed that the notation was partially obliterated by the perforating stamp of the bank on which it was drawn. Defendant says that it was impossible to have written the notation on the check after the perforation. Plaintiff and his sons testified that it was not there and defendant and his clerk testified that it was. Defendant's version of the settlement was that Triplett insisted that he and not plaintiff was the procuring cause of the sale and defendant contended that he did not owe plaintiff anything, but as a matter of compromise he was willing to give and did give plaintiff the sum of $930.06 or one-half of the amount claimed by him. Defendant now says that this transaction constituted an accord and satisfaction as a matter of law and therefore his instruction should have been given. However, in discussing this point defendant depends in part upon testimony favorable to him, given by his witnesses, and entirely overlooks the rule that all the testimony in the case, that on the part of defendant as well as that for plaintiff, together with all reasonable inferences that may be drawn therefrom, must be taken in its most favorable light to plaintiff.

Now, it might be said, with some show of reason, that an inference may be drawn from plaintiff's testimony which would tend to sustain defendant's contention. Taking plaintiff's testimony that we have quoted supra, by itself, it might be said to show that defendant was claiming that his contract with plaintiff was that plaintiff's one-third of the profits was to be divided with defendant and that defendant offered plaintiff the sum

of $930.06, being one-half of the one-third of the profit in full settlement of the controversy, saying "that was the best he could do." Now if this were the true condition of affairs, there was an accord and satisfaction even though plaintiff told defendant that he would not take the check and accepted it under protest, as he afterwards cashed it. It is well settled that where a debtor in good faith disputes the amount of the claim of a creditor, in other words, where the claim is unliquidated, if a check is tendered on condition that it is full payment of the amount due and the creditor cashes it, there is accord and satisfaction, although the creditor protests that he does not take the check in full payment, that he is merely giving the debtor credit for the amount. [Bahrenburg v. Fruit Co., 128 Mo. App. 526; Pollman Coal Co. v. St. Louis, 145 Mo. 651, 659; McCormick v. City of St. Louis, 166 Mo. 315; Knapp & Co. v. Syrup Co., 137 Mo. App. 472, 478; Cornelius v. Rosen, 111 Mo. App. 619; Brady v. Ins. Co., 180 Mo. App. 214.] However, if the claim is definite and undisputed as to the sum due, the naked agreement to accept a less sum in discharge of the whole will not be binding for lack of consideration, and in order to prevent the claim being a liquidated one, there must be an honest difference between the parties as to the amount due. [Chamberlain v. Smith, 110 Mo. App. 657; Lightfoot & Son v. Hurd & Co., 113 Mo. App. 612; Bahrenburg v. Fruit Co., supra.] Of course, this would be the rule whether the creditor accepted the payment as one in full or not.

It will be noted that defendant did not claim at the trial and it is not his contention now, that the plaintiff was entitled to one-half of one-third of the profits but that he was not entitled to anything and that the $930.06 offered and paid to him was merely for the purpose of compromising plaintiff's claim. So if plaintiff's testimony can be taken to mean that defendant was claiming that he was entitled to one-half of plaintiff's part, such claim was not made in good faith. Taking all of the testimony in its most favorable light to plaintiff, it

would appear that when defendant told plaintiff that $930.06 was his part because he, defendant, was entitled to one-half of plaintiff's one-third, he was merely giving an excuse to plaintiff for his action in refusing to pay plaintiff the full amount due him, and was not in good faith attempting to claim that that was the correct amount due. Therefore, taking the evidence in the light mentioned, it would appear that the $930.06 was not offered to plaintiff to compromise an unliquidated claim or one where plaintiff was claiming that he was entitled to $1860.12 and defendant was claiming that he was entitled to nothing, for the reason that his efforts were not the procuring cause of the sale, but that defendant owed him $1860.12, which debt was not in good faith disputed, and defendant merely as an excuse for not paying the full amount stated in bad faith that only $930.06 was due plaintiff because defendant was entitled to but one-half of plaintiff's one-third. We think the question under all of the testimony as to whether or not there was accord and satisfaction was one for the jury. [Lightfoot & Son v. Hurd & Co., supra; Knapp & Co. v. Syrup Co., supra; Chamberlain v. Smith supra; Bahrenburg v. Fruit Co., supra; Heller v. McGilvray, 223 S. W. 970; Sandbrook v. Morrison Investment Co., 209 Mo. App. 600.] In Bahrenburg v. Fruit Co., supra, it is said, l. c. 537, 538:

"If a debtor who pays a less sum than is claimed by his creditor, wishes to put the letter to his election of accepting the amount paid in full satisfaction or rejecting it, he must express his proposal in terms so plain that a court can declare there was an accord and satisfaction. And a court might do this even though the intention to offer in full payment was not expressed in clear words, if the facts pointed unmistakably to such an intention. But in most such instances the question of what the debtor intended and of how the creditor was bound to understand him, would be one of fact for the jury."

It is also insisted that defendant's instruction in the nature of a demurrer to the evidence should have been given for the reason that there is no evidence that plaintiff was the procuring cause of the sale. A reading of the facts stated by us, supra, readily, shows that there is no merit in this contention. [Bigham v. Linville, 170 Mo. App. 354, 356, 357; Crain v. Miles, 154 Mo. App. 338; Realty Co. v. Realty Co., 144 Mo. App. 620.]

Complaint is made of plaintiff's instruction No. 1, which reads as follows:

"If the jury find and believe, from the evidence that during the month of November, 1919, the plaintiff and the defendant entered into an oral contract wherein it was mutually agreed that if the plaintiff would find a purchaser for the real estate, to which reference is made in the testimony, for such a price as the defendant would be willing to accept, that the defendant would pay to the plaintiff, as and for his compensation for procuring such a purchaser, one-third of any amount at which said real estate might be sold, over and above the sum of $8800, including also a certain amount of interest to be computed thereupon as well as certain other charges and expenditures to which reference is made in the testimony; and if you should further find and believe from the evidence, that pursuant to said agreement, if any, the plaintiff did, on or about November 11, 1919, produce a purchaser for said real estate in the person of E. T. Kniseley, who purchased said real estate from the defendant, at or about the sum of $15,000, then you will find for the plaintiff, upon his petition, in an amount equal to one-third of the amount for which said real estate was so sold, over and above the sum of $8800, the interest thereon as well as the charges and expenditures to which reference is made in the testimony, less, however, the sum of $930.06, which the defendant has already paid the plaintiff thereupon, but your verdict shall not exceed the sum of $930.12, provided, however, that the plaintiff did not receive the sum of $930.06 in full

payment of his claim sued upon herein as explained in other instructions.''

It is claimed that the use of the words in the instruction ''produce a purchaser'' submitted to the jury a mixed question of law and fact in that the jury were not told in the instruction what were the legal requirements of producing a purchaser; that the instruction should have submitted the necessary facts, shown in evidence, which under the law would amount to a production of a purchaser. If this was error, it was joined in by defendant in his instruction No. 3, which contains similar language. However, we think that the words ''produce a purchaser'' are not technical words and the jury needed no definition of them and that there was no submission of a mixed question of law and fact as contended for by the defendant. [Ross v. Major, 178 Mo. App. 431, 442; Schwabe v. Estes, 202 Mo. App. 372.]

It is stated that the last part of the instruction, beginning with the word ''provided,'' is an improper comment upon the evidence, is argumentative, and withdraws from the jury the question of accord and satisfaction. We fail to see how there can be any merit in this contention. It clearly does not tell the jury that the $930.06 was not received in full payment of the claim. The jury could not find otherwise than that that question was left to their consideration, although the wording could have been better. Defendant says that ''full payment'' means that the plaintiff ''had received every penny that he claimed,'' therefore, that part of the instruction was confusing to the jury as ''the defense is not made on full payment but upon the payment of a lesser sum than the amount claimed because defendant had denied liability for any sum.'' The jury could not possibly have misunderstood the instruction. In view of the plain issues in the case and ''the other instructions,'' the jury well understood that the words ''in full payment'' were the same as ''in full satisfaction,'' if they do not mean that upon their face.

A complaint is made of the admission of certain testimony tending to show that there was an argument and a settlement of other matters between the parties at the time defendant paid plaintiff the sum of $930.06, but defendant went into the matter first on the cross examination of plaintiff and the matter was fully brought out by the redirect examination. Aside from this, the objections were very indefinite. [Green v. Strother, 201 Mo. App. 418, 427.] There was no error in connection with this matter.

The judgment is affirmed. All concur.