## ANNA SNYDER v. CITY OF ST. PAUL AND OTHERS.[1]

May 8, 1936.

No. 30,587.

*Clifford W. Gardner,* for appellant.
*John L. Connolly* and *Hilary J. Flynn,* for respondents.

LORING, JUSTICE.

This case comes here on plaintiff's appeal from an order denying her motion for a new trial. She brought the suit as a taxpayer of the city of St. Paul in behalf of herself and others similarly situated to restrain the city and the named officers from expending certain funds from the public treasury of the city in payment of claims for back pay by city employes.

In 1925 the city adopted the so-called "Cost-of-Living Wage-Scale" ordinance, under which compensation paid in the year 1916 was taken as the base scale, to which was added the percentage increase in the cost of living in the St. Paul area as determined by the federal department of labor, in fixing current wages and salaries. All city

[1]Reported in 267 N. W. 249.

employes in the classified service were paid under this ordinance. It was the contention of the city employes in the department of public safety that from February 16, 1926, to June 1, 1932, they were not paid in full. The average amount of shortage of pay was ultimately computed to be $247 for each employe for the entire period. Prior to August, 1932, the employes who claimed to be entitled to payment of the sums withheld and which we shall call "back pay" made demand therefor upon the city council and comptroller. Later written demands were made by counsel for the claimants, setting up an aggregate of approximately $275,000. Negotiations between the claimants and the city resulted in settlement with each of these individual employes for a specific amount, the total aggregating $176,489.60, funds for which were included in the 1933, 1934, 1935, and 1936 budgets and which did not swell the budgets above the legal limit. It is claimed by the plaintiff that the charter of the city prohibits the payment here sought to be enjoined; that § 47 of the charter forbids any employe to receive any other or greater sum of money than the salary provided pursuant to the charter and that under § 133, subds. 2 and 4, the council may not compromise any claim or pay any demand not lawfully authorized and duly audited. The difficulty with that contention is that under the record and findings there appears to be a bona fide claim made that these payments were authorized pursuant to the charter and should have been paid when the services were rendered. There is a finding that at that time funds were available for that purpose. It also appears that the comptroller, whose duty it is to audit all claims or demands against the city, included funds sufficient to pay these settlements in his annual budget, which was approved by the council. It is a generally accepted doctrine that a municipality may, unless forbidden by statute or charter, compromise claims against it without specific express authority, such power being implied from its capacity to sue and be sued, and that ordinarily power to compromise claims is inherent in the common council as a representative of the municipality. If it makes such compromises in good faith and not as a gift in the guise of a compromise, the settlement is valid and does not depend upon the ultimate decision

that might have been made by a court for or against the validity of the claim. Prout v. Pittsfield Fire Dist. 154 Mass. 450, 28 N. E. 679; Quinby v. City of Cleveland (C. C.) 191 F. 68; 44 C. J. § 4644, p. 1449. We are of the opinion that the record here brings this case within the rule stated and that the compromise and settlement was not a subterfuge to disguise a gift.

The defendants have presented affidavits showing that the entire amount of these claims has been paid by the city and that it intends to make no further payment. These affidavits were presented in support of a motion to dismiss on the ground that the case has become moot. Much might be said in favor of the position. We prefer to rest our opinion upon the merits.

The order appealed from is affirmed.