STATE OF MISSOURI, at the Relation of ST. LOUIS SHIPBUILDING and STEEL COMPANY, a Corporation, Appellant, v. FORREST SMITH, as State Auditor of the State of Missouri.—No. 39981.—201 S. W. (2d) 153.

Division Two, March 10, 1947.

Rehearing Denied, April 21, 1947.

*Chas. Morsey* and *Paul Plummer* for appellant.

26

*J. E. Taylor*, Attorney General, and *Tyre W. Burton* and *David Donnelly*, Assistant Attorneys General, for respondent.

TIPTON, J.—In the circuit court of the city of St. Louis appellant filed a petition for a writ of certiorari to compel respondent to certify the record of his proceedings in the matter of denying appellant's application for a refund of sales tax. Return to the writ was made by respondent and the case was submitted to the trial court on the record. The court found for respondent and quashed the writ. Appellant has duly appealed to this court.

This action is controlled by the Sales Tax Act of 1943, and all sections referred to in this opinion will be found in the Laws of 1943.

Section 11408 provides that "there shall be and is hereby levied and imposed and shall be collected and paid:

"(a) Upon every retail sale in this State of tangible personal property a tax equivalent to two (2%) per cent of the purchase price paid . . . at the time and place" of the sale.

Section 11409 exempts from the provisions of this act all sales transactions in interstate commerce.

Section 11411 requires the seller to collect the tax and to make a return to the state auditor of all taxes collected for the preceding month and remit the taxes so collected to the auditor on or before the 15th of each month.

Section 11413 gives the state auditor the power to administer the provisions of the act, and vests him with authority to promulgate reasonable rules and regulations in the administration of it.

Section 11426 provides that if any person neglects or refuses to make a return and payment as required by this act the auditor shall make an estimate based upon any information in his possession, and upon the basis of the estimated amount compute and assess the tax payable by the delinquent, and add thereto ten per cent (10%) penalty. It requires that the auditor give to the delinquent written notice of such estimate, tax and penalty.

Section 11427 requires payment from the delinquent within fifteen days after service of notice.

Section 11428 permits the taxpayer to petition the auditor for reassessment within thirty days after the service of notice. It also provides that "if no petition for reassessment is filed with the (State) Auditor the person may nevertheless appear at the hearing and present his objections orally."

Section 11430 provides that if the tax is not paid when due the same shall bear interest at the rate of three per cent per calendar month.

Section 11432 provides in part that "if any tax, penalty or interest has been paid more than once, or has been erroneously or illegally collected, or has been erroneously or illegally computed, such sum shall be credited on any taxes then due from the person under this article, and the balance shall be refunded to the person [taxpayer]."

Section 11441 provides for the General Assembly to appropriate sufficient funds for the auditor to make any refund of taxes as required by this article or by final judgment of court.

Under Section 11445 the circuit court of the county where the taxpayer resides has the "power to review all questions of law and fact determined by the Auditor in administering the provisions of this article by writ of certiorari to the Auditor."

The record as certified to the circuit court shows that appellant had filed no sales tax returns with respondent for the reason that it contended that its sales were transactions in interstate commerce, and

were exempt from the tax by the statutes. On July 10, 1942, respondent made an estimate of the sales tax due for the period from January 1, 1940, to June 30, 1942, and he found taxable sales receipts amounting to $3,250,685.54, with a delinquent tax of $65,013.71, and interest of $24,375.18, a total of $89,388.89 due. After this original estimate of tax was made, appellant and respondent had several conferences concerning the tax liability of appellant and evidently appellant convinced respondent that the total sales subject to tax amounted to $1,887,037.03. The tax due on this amount was $37,740.74.

On March 3, 1943, appellant's attorney wrote respondent that he believed that practically all of appellant's sales were interstate commerce transactions but to avoid litigation he thought a settlement could be worked out which would be fair and equitable to all concerned. The letter made an offer to pay a tax in the sum of $37,296.38, provided there would be no interest or penalties. The letter closed with the following paragraph:

"If you will check against your work sheets the total sales on which we are to pay the tax for each of the above periods, you will find, I believe, that we have included all sales excepting those items on which we were able to satisfy you that the sales were made to non-residents of this State for use outside the state and where deliveries were made to the purchasers at points outside of Missouri."

This offer was not accepted and on March 23, 1943, appellant's attorney wrote respondent the following letter:

"Under date of March 3, 1943, we submitted to you a proposition for the settlement of the liability of the above named company under the Missouri Sales Tax Law. This settlement was not accepted by your Department for the reasons explained to me over the telephone, and I have now procured and am submitting herewith a revised offer of settlement on the following terms:

"St. Louis Shipbuilding & Steel Company will pay to the State of Missouri the two per cent (2%) sales tax on:

"Sales made from January to September, 1940, inclusive, in the total amount of $22,218.00 and sales made during the months of October, November and December, 1940, in the total amount of $197,-349.12, or total sales for the year 1940 amounting to $219,567.12.

"Sales for the year 1941 in the total amount of $938,098.00.

"Sales for the first six months of the year 1942 in the total amount of $729,371.91, and

"Six per cent (6%) interest on the tax due on account of the above sales.

"According to our calculation, the tax on the above sales amounts to a total of $37,740.74 and the interest to the sum of $2,264.44, or a grand total of $40,005.18, for which amount we are attaching draft payable to the order of Forrest Smith, State Auditor.

"There shall be no interest or penalties other than the six per cent (6%) interest included in this offer, and the above payment will be accepted by the State of Missouri in full settlement of any and all claims that it may have against St. Louis Shipbuilding & Steel Company under the present, as well as any former, sales tax law for sales made at any time prior to July 1, 1942."

Respondent cashed the draft but did not reply to this letter.

After our decision in the case of American Bridge Co. v. Smith, 352 Mo. 616, 179 S. W. 2d 12, in which this court held that the Missouri Sales Tax Act exempted all sales transactions in interstate commerce, appellant filed a claim for refund with respondent. The sole ground upon which the refund was claimed was that the sales on which the tax was paid were interstate transactions and, therefore, no tax was due. Several letters passed between counsel for appellant and respondent. Appellant requested that it be granted a hearing on the claim in order that it might show that the sales transactions were actually in interstate commerce. Without granting appellant an opportunity to present its evidence, respondent denied the claim on the ground that "the account has been settled by agreement."

Under Section 11445 it is the duty of the court to review all questions of law and fact determined by respondent. A review of this record justifies the following facts. Appellant filed no sales tax reports with respondent because it contended that all of its sales were interstate transactions, but it was the contention of respondent that certain kinds of interstate sales transactions were liable for the sales tax. For the period in question the sales tax due on these transactions was $37,740.74. To avoid litigation appellant agreed to pay the tax due if respondent would accept 6% interest instead of the 3% per month interest due under Section 11431. This offer was accepted by respondent when he cashed the bank draft.

After our decision in the American Bridge case, supra, appellant filed a petition for refund contending that the sales under which the tax was assessed were interstate in character and, therefore, were illegally collected. Since respondent did not give appellant an opportunity to prove that the transactions in question were interstate transactions and did not deny that fact, but denied the claim for refund solely on the ground of a compromise, we must assume that respondent treated the same as interstate sales.

The principal contention of appellant is that under the laws of this state respondent had no power to settle or compromise the tax liability. For the purposes of this case, we will assume on authority of the American Bridge case, supra, that the sales tax paid by appellant was on sales transactions in interstate commerce and appellant would be entitled to a refund if it were not for the compromise settlement referred to above. The record shows that there was no compromise of the amount of tax respondent contended ap-

pellant owed, but the record does show that the interest was not collected in full. Instead of collecting 3% per month interest as required by the statutes, respondent compromised the interest by settlement at the rate of 6% per annum.

We agree with appellant that respondent did not have authority to compromise a tax that had been lawfully assessed. Under Section 11408 an assessment is made every time a sale is made at retail. That section provides that "from and after the effective date of this Act, there shall be and is hereby levied and imposed and shall be collected and paid:

"(a) Upon every retail sale in this state of tangible personal property a tax equivalent to two (2%) per cent of the purchase price paid or charged . . . ."

Section 51, Article IV of the Constitution of 1875 provides:

"The General Assembly shall have no power to release or extinguish, or authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State, or to any county or other municipal corporation therein."

We construed this section of the Constitution in the case of Graham Paper Co. v. Gehner, 332 Mo. 155, 59 S. W. 2d 49. We held that unmatured income tax was an indebtedness, liability or obligation to the state which the legislature had no power to release or extinguish by the 1927 amendment to the income tax law.

Respondent does not contend that he has the power to compromise the tax but contends that he does have power to compromise the interest and penalties, as it is no part of the tax. We so held in the case of State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 61 S. W. 2d 750. In that case we had under consideration the constitutionality of an act of the Fifty-seventh General Assembly, known as Senate Bill No. 80. (Laws of 1933, page 423.) That act provided that upon the payment of the delinquent real estate taxes for the years 1930, 1931 and 1932 in a given time, the taxpayer would be relieved of paying all penalties, interest and costs on each assessment. We held that act did not violate Section 51, Article IV of the Constitution for the reason that penalties were not part of the tax. In ruling the case, we said:

"It follows that as used in the chapter on taxation in the Revised Statutes the expressions 'commissions,' 'interest,' 'fees,' and 'costs' are included in the generic term 'penalty.'

"With regard to what may be called the interest penalty, this court in banc, in Seaboard National Bank v. Woeston, 176 Mo. 49, loc. cit. 62, 75 S. W. 464, held that the statute (now section 9914) does not change the character of the imposition; that it is not an 'additional tax' at all, for regarded as a tax it would or possibly might be illegal, as the amount of the taxes that the Constitution permitted had already been levied; and that it is not 'interest' in any proper sense, because it is a penalty imposed for a failure to discharge a duty that can be

lawfully demanded. See, also, St. Francis Levee District v. Dorroh, 316 Mo. 398, loc. cit. 410-413, 289 S. W. 925; 4 Cooley on Taxation (4th Ed.), sec. 1821, p. 3573; State ex rel. Gold Mines v. Superior Court, 93 Wash. 433, 161 P. 77; Jones v. Williams (Tex. Sup.), 45 S. W. 2d 130, 136, 79 A. L. R. 983, and cases there cited. And the same rule applies to other burdens imposed by statute for the non-payment of delinquent taxes, which being in the nature of penalties (State ex rel. v. Coos County, 115 Or. 300, 237 P. 678, 679; Colby v. Medford, 85 Or. 485, 487, 167 P. 487; Jones v. Williams, supra), clearly come within the broad scope of the word 'penalties,' which is defined as 'an exaction in the nature of a punishment for the non-performance of an act, or for the performance of an unlawful act, and involving the idea of punishment, whether enforced by a civil or criminal action or proceeding.' Law Dictionary, Ballentine, p. 948; Hall v. Norfolk & W. R. Co., 44 W. Va. 36, 28 S. E. 754, 41 L. R. A. 669, 67 Am. St. Rep. 757." Loc. cit. 753.

There is nothing in the Constitution or statutes that would prohibit respondent from compromising the interest and penalties in a disputed sales tax liability.

 Respondent contends that since the Sales Tax Act gives him the power to sue for the tax, it necessarily gives him the implied power to settle the tax, except where he is prohibited from doing so by law. He, therefore, contends that he has the power to compromise interest and penalties. We think respondent's contention must be sustained. In the case of The St. Louis, Iron Mountain & Southern Railway Co. v. Anthony, 73 Mo. 431, l. c. 434, we said:

"It is now contended that the county had no authority to make the compromise in question, or any compromise whatever. We are not of that opinion. The power to sue implies the power to accept satisfaction of the demand sued for, whether the precise amount demanded or less. The taxes were levied for the benefit of the county. The beneficial interest was in the county, and it is for the public interest that she should have the right to settle, by compromise, questionable demands which she may assert. Must the county prosecute doubtful claims at all hazards, regardless of costs and expenses, and is it for the public good that the right to settle such demands by compromise be denied her? As was said by the supreme court of New York in the case of the Board of Supervisors of Orleans Co. v. Bowen, 4 Lansing 31: 'It would be a most extraordinary doctrine to hold that because a county had become involved in a litigation, it must necessarily go through with it to the bitter end, and has no power to extricate itself by withdrawal or by agreement with its adversary.' The same doctrine was sanctioned in the Supervisors of Chenango County v. Birdsall, 4 Wend. 453."

That case was ruled under our Constitution of 1865 which did not have a provision similar to Section 51, Article IV of the 1875 Constitution.

The Minnesota Supreme Court in the case of Snyder v. City of St. Paul et al., 267 N. W. 249, 105 A. L. R. 168, held that a municipality may, unless forbidden by law, compromise claims without specific express authority, such power being implied from its capacity to sue and to be sued. See, also, the numerous cases annotated in the notes of 105 A. L. R. 168 to the same effect.

We, therefore, hold that respondent had the power to compromise the interest and penalties in the case at bar, since there was dispute between the parties as to whether appellant was liable for the sales tax in question.

Appellant's letter of March 3, 1943, and its letter of March 23, 1943, show that appellant was contending that it was not liable for the sales tax in the sum of $37,740.74 because the sales were interstate transactions, but to avoid litigation it would pay that amount with interest at 6% per annum instead of 3% per month. Note the following language in the letter of March 23, 1943: "There shall be no interest or penalties other than the six per cent (6%) interest included in this offer, and the above payment will be accepted by the State of Missouri in full settlement of any and all claims that it may have against St. Louis Shipbuilding & Steel Company . . ." By cashing the draft accompanying the letter of March 23, 1943, respondent accepted appellant's offer to compromise the interest and penalties. Ellis v. Mansfield, 215 Mo. App. 292, 256 S. W. 165.

At the time the compromise offer was made and accepted there was a difference of opinion in regard to the validity of the tax. The fact that it later may be found that no tax was due does not disturb the compromise. The compromise of a doubtful claim is a good consideration for a contract. Reilly v. Chouquette, 18 Mo. 220; Wood v. Kansas City Home Telephone Company, 223 Mo. 537, 123 S. W. 6.

It follows that the trial court properly quashed the writ of certiorari, and the judgment of the trial court should be affirmed. It is so ordered. All concur.