C. C. CARSON, Appellant, v. JOHN L. SULLIVAN, Secretary of State, et al.

In Banc, July 28, 1920.

1. **INJUNCTION:** Against State Officers. The State itself cannot be enjoined, but the Secretary of State and other state officers can be enjoined by the courts when they are about to act in an unconstitutional or illegal manner.

2. ———: ———: Parties: Taxpayer. A taxpaying citizen is entitled to maintain injunction against the Secretary of State and Attorney-General to restrain them from preparing and certifying a ballot title to a proposed referendum to the legal voters of a resolution adopted by the Legislature.

3. **REFERENDUM:** Amendment to U. S. Constitution: Legislative Ratification. The Supreme Court of the United States has ruled (1) that the Eighteenth Amendment prohibiting the manufacture, shipment or sale of intoxicating liquors for beverage purposes is within the power to amend reserved by Article V of the Constitution of the United States, and (2) that the provisions of said article declaring that a proposed amendment "when ratified by three-fourth of the legislatures of the several states" shall to all intents and purposes become a part of the Constitution, have reference to legislative bodies as they were known at the time the Constitution was adopted, and not to any other body or the people generally; therefore, *Held*, that the joint and concurrent resolution by which the two houses of the Missouri Legislature ratified said Eighteenth Amendment cannot be referred by referendum petitions to the legal voters for their approval or rejection.

*Held*, by GRAVES and BLAIR, JJ., concurring in the result only because a Federal question is involved and the prior ruling of the Supreme Court of the United States has foreclosed freedom of action, (1) that the people become as much a part of the Legislature in states which have made the initiative-and-referendum provision a part of their Constitution as are the two houses of the legislative assembly, and (2) that the term "legislatures" used in Article V of the Constitution of the United States means the legislative processes of the states at the time the Federal amendment it submitted for State action, and does not mean the legislative process or procedure at the time of the adoption of said Constitution.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. Elmer Ball* for appellant.

(1) Respondents are executive or administrative officers of the State of Missouri and are amenable to injunction when they attempt to do what they ought not do. Sec. 6750, R. S. 1909; Merchants' Exchange v. Knott, 212 Mo. 616; Ex Parte Young, 209 U. S. 123, 28 Sup. Ct. Rep. 441; Symth v. Ames, 169 U. S. 466, 18 Sup. Ct. Rep. 418. (2) Appellant, as a taxpayer and citizen of the State of Missouri, is authorized and entitled to prosecute this action. Sec. 6750, R. S. 1909; Newmeyer v. Railway, 52 Mo. 81; State v. Curators, 57 Mo. 178; State ex rel. v. Woodside, 254 Mo. 580. (3) The Eighteenth Amendment was proposed to the several states of the United States by the Sixty-fifth Congress in the same manner as the preceding seventeen amendments to the Federal Constitution were proposed by the Congress, and as provided by the terms of Article V of the Constitution of the United States. Black's Const. Law (3 Ed.), p. 45; 12 C. J. 681-682, secs. 14, 15, 16, 17. (4) Said resolution is not an "act of the legislative assembly" within the meaning of Section 57, Article IV, of the Constitution of Missouri. 1 C. J. p. 912, note 75. (5) The Constitution of Missouri distinguishes within itself between acts and resolutions and uses the terms "act" and "law" interchangeably. Secs. 24, 25, 30, 37, 38, 40, Art. 4; Secs. 12, 14, Art. 15. (6) It was not the intention of the General Assembly of Missouri or of the people of this State to include resolutions of the character of said "Senate Joint and Concurrent Resolution No. 1" within the provisions of the Constitution of Missouri relating to the referendum. In re Opinion of the Justices of Maine, 107 Atl. 673; Hebring v. Brown, 180 Pac.

(Ore.) 328; Whittemore v. Terrall, 215 S. W..686. (7) The submission of said "Senate Joint and Concurrent Resolution No. 1" to the voters of the State of Missouri for their approval or rejection is contrary to the terms and provisions of Article V of the Constitution of the United States and is therefore a nullity, illegal and void. (a) The debates and proceedings of the members of the convention which framed the Federal Constitution sustain this view. Madison's Journal, pages, 111, 112, 199, 200, 410, 416 and 452; 4 Elliott's Debates on Fed. Con., pp. 177, 176. (b) The definitions of the term "Legislature" sustain this view. 25 Cyc. 182. (c) The meaning and use of the term "legislature" in other sections of the Federal Constitution sustain this view. Clause 1, Section 2, Article 1; Section 3, Article 1; Section 4, Article 1; Clause 2, Section 1, Article II, U. S. Constitution. (5) The decisions of the United States Supreme Court on sections of the Federal Constitution containing the term "legislature" sustain this view. State ex rel. v. Hildebrant, .241 U. S. 565. (8) A provision of a State constitution which contravenes the Federal Constitution is null and void. Article VI, U. S. Constitution; 12 C. J. p. 743, par. 3b; Dodge v. Woolsey, 18 How. 331-338, 15 L. Ed. 401; Gibbons v. Ogden, 9 Wheat. 210; Northern Securities Co. v. United States, 193 U. S. 347.

*Frank W. McAllister,* Attorney-General, for respondent.

(1) Appellant's contention hinges upon the meaning of the word "act," as employed in that part of Section 57 which defines the power reserved to the people to refer, commonly known as the referendum, the contention being that, as there used, it means only an act of the legislative assembly in the enactment of bills into laws, and does not include resolutions of any character upon any subject. Among the well established and generally recognized rules of constitutional con-

struction are the following, which are important in the matter at hand: (a) The primary purpose is to ascertain and give effect to the intent of the farmers and the people who adopted it. (b) It is presumed that words are employed in their natural and ordinary meaning. (c) The construction should not be technical, and should be neither liberal nor strict. (d) The object sought to be accomplished and the evils sought to be prevented should be constantly kept in mind. (e) An exception stated excludes all other exceptions. 12 Corpus Juris, pp. 700, 703. (2) The people of the State wrote into their Constitution in 1875 and into that part of it known as the ''Bill of Rights,'' which is an express limitation upon the legislative and other power of the state government, the following provision, Section 3 of Article II: ''That Missouri is a free and independent State, subject only to the Constitution of the United States; and as the preservation of the States and the maintenance of their governments are necessary to an indestructible Union, and were intended to co-exist with it, the Legislature is not authorized to adopt nor will the people of this State ever assent to any amendment or change of the Constitution of the United States which may in any wise impair the right of local self-government belonging to the people of this State.'' The reference to the people, for their approval or rejection, of the action of the General Assembly in ratifying the Eighteenth Amendment is strictly in line with the spirit and purpose of this provision. A fundamental canon of construction is that ''in interpreting clauses we must presume that words have been employed in their natural and ordinary meaning.'' Cooley on Const. Limitations (7 Ed.), p. 92; Gibson v. Ogden, 9 Wheat. 188; 12 C. J. p. 705; State ex rel. v. Railroad, 263 Mo. 696. (4) Appellant seeks to give to the word ''act'' a narrow, technical meaning, which limits its application to one form of legislative action, to acts taken in a particular way and in a particular manner. Legislative action by

resolution is frequently taken and is a well recognized method of expression for the legislative will. Applying the rule and giving to the words "any act" their natural and ordinary meaning, they mean any action the legislative assembly may take within the scope of its power, and certainly include action by resolution, as well as by bill. (5) A settled conviction in the minds of the majority of the people of this State that their legislative representatives did not always reflect their wishes, led to the adoption of the initiative and referendum. They believed that legislative action in many instances was not in accord with the will of a majority of the people. Their purpose in the amendment was to provide a means by which the people might reject the action of their representatives in the Legislature and themselves declare and accomplish the will of the majority. Certainly no more important duty comes to the representatives of the people of a State than the approval or rejection of amendments to the Federal Constitution. (6) The provision expressly excepts certain subjects from the operation of the referendum, namely, "laws necessary for the immediate preservation of the public peace, health or safety and laws making appropriations for the current expenses of the state government, for the maintenance of the state institutions and for the support of public schools." A glance at these exceptions will disclose that they all belong to one class, that is, that they are all of such character that the delay incident to their reference to the people at a subsequent election would stop the wheels of government and leave its institutions and those dependent upon it for support from day to day, helpless. It is evident that it is only measures which meet emergencies of this character that are excepted. 25 Ruling Case Law, p. 230; 12 C. J. p. 699. (7) Appellant's contention is that the term "legislatures," as used in the clause "when ratified by the legislatures of three-fourths of the several states," does not mean the body which exercises the power of legislation for the

state, but that the elected members of the legislative assembly are constituted a special body, by Article V, for the purpose of ratifying or rejecting proposed amendments, and that they act under the special authority of that article and not as the representatives of the legislative or sovereign power of the people. Upon this theory rests the contention that the action of the legislature in ratifying or rejecting amendments to the Federal Constitution cannot be referred to the people under the referendum provisions of the State Constitution, whatever the provisions of the State Constitution may be. Under the American system of government, the people are the repository of all governmental power. Both the national and state governments are republican, or representative, in form, and the distribution of the powers of government into three separate and distinct departments or branches, namely, the executive, legislative and judicial, is an essential principal and element of republican government. The legislative is the law-making branch of the state government and is the representative of the sovereign power of the people. It represents the people in their sovereign capacity and exercises sovereignty, under prescribed rules and limitations, for the people. Because the legislative branch of the state government was and is the repository of the sovereign power of the people of the state and directly representative of the people of the state, the framers of the Constitution provided that proposed amendments to the Federal Constitution should be submitted to the legislatures of the several states. The intention was that the people of the state, in the exercise of their sovereign power, should ratify or reject amendments. At the time of the adoption of the Constitution there was no recognized or practical method of submitting questions of this character to the people directly. The states had no machinery under which a popular expression might be had and the theory and system of the initiative and referendum was undeveloped and practically unknown. In the

absence of any means to submit amendments directly to the people, the convention adopted the plan of submitting them to the ·people through the representatives of their sovereign power. In this State the body of persons clothed with authority to make laws is the qualified members of the General Assembly and, in certain instances and under some circumstances, the qualified voters of the State. The framers of Article V of the Constitution had in mind to refer proposed constitutional amendments ''to the body of persons in the State clothed with authority to make laws.'' They intended that they should go to the legislative branch of the State government for ratification or rejection, and they so intended because that branch was the sole representative of the sovereign power of all the people of the State. State ex rel. v. Polley, 26 S. D. 5; State ex rel. v. Hildebrant, 94 Ohio, 154; Davis v. Ohio, 241 U. S. 565; State ex rel. v. Howell, 181 Pac. (Wash.) 920.

*Henry Kortjohn, Jr.,* for *amicus curiae.*

(1) Missouri having adopted in its Constitution the initiative and referendum as part of its legislative department of the government, the term ''legislature'' in this State means legislative power or law-making department of the government, and not merely the representative assembly known as the two houses of the Legislature. Mo. Constitution, Art. IV, secs. 57, 44; Art. II, secs. 1, 2, 3; Art. V, sec. 14; Allen v. State, 130 Pac. 1114; Davis v. Ohio, 241 U. S. 565; Pac. Tel. Co. v. Oregon, 223 U. S. 118; State ex rel. v. Howell, 181 Pac. 920; State ex rel. v. Polley, 26 S. D. 5; 18 Am. & Eng. Ency. Law, 822; 25 Cyc. 182. (2) Article V of the United States Constitution, providing among other things that amendments shall become parts of the Federal Constitution ''when ratified by the legislatures of three-fourths of the several states,'' means the legislative department of the state government, and is not re-

stricted to the legislature composed of the two houses. State ex rel. Davis v. Hildebrandt, 94 Ohio St. 154, 241 U. S. 565; Pac. Tel. Co. v. Oregon, 223 U. S. 118; Art. I, sec. 4, Federal Const.; Art. IV, sec. 4, Federal Const. (3) Under the Missouri Constitution it is mandatory that the provisions of the proposed Eighteenth Amendment to the Constitution of the United States be submitted to the people of the State for their approval or rejection. Section 3, Art. II, Mo. Constitution; Chisholm v. Georgia, 2 Dall. 419; Cohens v. Virginia, 6 Wheat. 264; Ableman v. Booth, 21 How. 506; McCulloch v. Maryland, 4 Wheat. 316; Collector v. Day, 11 Wall. 113; Passenger Cases, 7 How. 283; Hammer v. Degenhart, 247 U. S. 251; Texas v. White, 7 Wall. 700, 725; State ex rel. v. Roach, 230 Mo. 435.

WALKER, C. J.—This is a proceeding by injunction instituted by the appellant in the Circuit Court of Cole County to restrain the respondents from preparing and certifying a ballot title to the proposed referendum on Senate Joint and Concurrent Resolution Number One adopted by the 50th General Assembly ratifying the Eighteenth Amendment to the Constitution of the United States prohibiting the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States, etc., and to enjoin the Secretary of State from furnishing his certified copy of said proposed referendum on said Senate Joint and Concurrent Resolution to be placed upon the ballots of the election to be held in November, 1920.

The respondents' demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action and for other reasons supplemental to the foregoing and more particularly definitive of the alleged failure of the petition to show that appellant was entitled to the relief prayed for. The circuit court sustained the demurrer, and from the judgment rendered thereon this appeal has been perfected.

1. The amenability of respondents as executive or administrative officers of the State to the restrictive power of the courts in a proceeding of this character has been frequently declared in a number of cases sufficiently similar in their substantial facts to authorize their citation in support of the regularity of this action. [State ex rel. v. Johnston, 234 Mo. l. c. 350; State ex rel. v. Roach, 230 Mo. l. c. 446; Merchants Exchange. v. Knott, 212 Mo. 616; State ex rel. v. Adcock, 206 Mo. 550; State ex rel. v. Goodier, 195 Mo. l. c. 560; State ex rel. v. Public Schools, 134 Mo. l. c. 304; State ex rel. v. Lesueur, 103 Mo. l. c. 262.]

*Injunction.*

It is not to be understood from these cases that the State itself can be enjoined, but when its officers act in an unconstitutional or illegal manner they are not to be regarded as acting for the State, and they may be enjoined. [Ex parte Young, 209 U. S. 123; Smyth v. Ames, 169 U. S. 466; 22 Cyc. p. 881, par. b.]

II. Appellant, being a citizen of the State and a taxpayer, was entitled to prosecute this action. [Sec. 6750, R. S. 1909; Newmeyer v. Railroad, 52 Mo. 81; State v. Curator's 57 Mo. 178; State ex rel v. Woodside, 254 Mo. 580; 22 Cyc. pp. 886, par. 4a and 897, par. B. n. 94.]

*Parties.*

III. These preliminary matters concerning the right of action, the proper parties thereto and the sufficiency of the pleading having been affirmatively settled, there remains for determination the main or vital question as to the right to refer under our State constitutional referendum law an amendment to the Federal Constitution.

The contention of the appellant, which runs counter to and challenges the correctness of the ruling of the trial court, is that the submission of the ratification of a proposed amendment to the Federal Constitution to the electorate of the State by a referendum is not within the purview of our organic law authorizing that pro-

cedure (Sec. 57, Art. IV, Con. Mo.); and that it is contrary to Article V of the Constitution of the United States, which provides, among other things not pertinent here, that an amendment thereto shall become a part of the Constitution when ratified by the legislatures of three-fourths of the states.

A recent decision of the Supreme Court of the United States, State of Rhode Island v. Palmer, 40 Sup. Ct. Rep. 486, has foreclosed all discussion of this question in holding that the referendum provisions of state constitutions and statutes cannot be applied consistently with the Constitution of the United States in the ratification or rejection of amendments to that constitution; and that the Eighteenth Amendment prohibiting the manufacture, etc., of intoxicating liquors for beverages is within the power to amend reserved by Article V of the United States Constitution. In other words, that the "legislatures of three-fourths of the states," as the words are employed in that article (V), has reference to legislative bodies as they were known at the time of the adoption of the Constitution and not by any other body or the people generally. The action of the respondents, therefore, in attempting to refer the legislative ratification of the Eighteenth Amendment to the people was without authority, and the trial court was in error in so ruling. From this it follows that the appellant is entitled to the relief sought. We therefore reverse and remand this cause with directions to the circuit court to set aside its judgment and enter a decree herein in favor of the appellant perpetually enjoining the respondents from attempting to refer the legislative ratification of said Eighteenth Amendment to the Constitution of the United States to the voters of the State for approval or rejection.

It is so ordered. *Williamson, Graves, Goode, Williams,* and *Blair, JJ.,* concur; *Graves, J.,* in separate opinion, in which *Blair, J.,* concurs; *Woodson, J.,* absent.

GRAVES, J. (concurring).—I concur in paragraphs one and two of this opinion and in the result of the opinion. I thus concur solely for the reason that there is a Federal question in the case, and our freedom of action is foreclosed by the ruling of the United States Supreme Court in State of Rhode Island v. Palmer, cited in the opinion of WALKER, C. J. I do not agree to the line of reasoning in the Palmer case, supra, and hence this separate concurrence. Nor do I agree to the ruling in Hawke v. Smith (the Ohio case), decided by the United States Supreme Court, 40 Sup. Ct. Rep. 495. In my judgment, the people become as much a part of the Legislature in states having the initiative and referendum in their constitutions, as the two branches of the legislative body. I further believe that the term "Legislature," as used in the Federal Constitution, means the legislative processes of the State at the time the Federal amendment is submitted for State action, and does not mean the legislative processes or procedure at the time of the adoption of the Constitution. But we are bound by the views of the Federal court, and I therefore concur as above indicated.

*Blair, J.*, concurs in these views, and withdraws his absolute concurrence in the majority opinion.