MELVIN KLEBAN, HARRY SAGER, and MAURICE H. SCHWARTZ, for Themselves and on Behalf of All Others Similarly Situated, and on Behalf of All Others Who May Intervene Herein, Appellants, v. M. E. MORRIS, Individually and as Treasurer of the State of Missouri, W. H. HOLMES, Individually and as Auditor of the State of Missouri, G. H. BATES, Individually and as Director of Revenue of the State of Missouri, E. L. PIGG, Individually and as Comptroller of the State of Missouri, CENTRAL MISSOURI TRUST COMPANY, as a Private Corporation and as a Depository of the State of Missouri, Their Successors in Office, and THE STATE OF MISSOURI, Respondents, No. 42693—247 S. W. (2d) 832.

Division Two, April 14, 1952.

8

*Byron Spencer, James T. Britt, Solbert M. Wasserstrom* and *James T. Blair, Jr.,* for appellants; *Spencer, Britt & Browne* of counsel.

*J. E. Taylor,* Attorney General, *Gilbert Lamb* and *Robert R. Welborn,* Assistant Attorneys General, for M. E. Morris and others, *Lewis H. Cook* for Central Missouri Trust Co., respondents.

BOHLING, C.—Melvin Kleban, Harry Sager and Maurice H. Schwartz, plaintiffs, originated this action by filing a petition in the Circuit Court of Cole County, Missouri, for the purpose of recovering payments of "use taxes" on motor vehicles purchased outside the state for use on the highways of Missouri under statutory provisions thereafter held unconstitutional and invalid. Plaintiffs named as defendants the State of Missouri and the following officials of the State of Missouri in their several official capacities and also

as individuals, to wit: M. E. Morris, as Treasurer, W. H. Holmes, as Auditor, G. H. Bates, as Director of Revenue, and E. L. Pigg, as Comptroller, and Central Missouri Trust Company, as a private corporation and as a depository of the State of Missouri. The question for determination, as in the circuit court, is: May plaintiffs maintain this suit against the named defendants? The trial court dismissed plaintiffs' petition and they appealed.

The parties mention a pending $200,000 appropriation for refunds to use tax payers (H. B. 496, § 10.270, 66th General Assembly) but plaintiffs say approximately $800,000 of use taxes were collected.

Briefly of the background. The Sixty-third General Assembly re-enacted the Missouri Sales Tax Act of which § 11412 was a part. Laws 1945, pp. 1865, 1870. Thereafter, the Sixty-fourth General Assembly re-enacted, among others, said § 11412 (2 Laws 1947, pp. 431, 433), which re-enacted section provided, among other things, that persons purchasing motor vehicles (for instance, outside the state) for use on the highways of this state pay an equivalent of said sales tax prior to the issuance of a certificate of [834] title for the motor vehicle (§ 11412(c)), with specified exemptions (§ 11412(d)), one provision exempting "motor vehicles having a seating capacity of ten passengers or more," and another exempting motor vehicles upon which a sales tax had been paid to Missouri. This act became effective July 18, 1948. (2 Laws 1947, p. 461.) In State ex rel. Transport Manufacturing & Equipment Co. v. Bates, 359 Mo. 1002, 224 S. W. 2d 996 (rehearing denied Dec. 12, 1949), it was held that a use tax was a valid and constitutional tax (l.c. 999 [5]; that the General Assembly could designate for use tax purposes motor vehicles upon which sales taxes had not been paid to Missouri and which were required to be registered in Missouri (l.c. 1000); but the exemption of motor vehicles having a seating capacity of ten passengers or more was invalid (l. c. 1000[14]); that the invalid exemption caused the "use tax" levied by said § 11412 to be unconstitutional (l.c. 1001[18]), and we issued our writ of mandamus that respondent perform the ministerial duty of issuing a certificate of title to relator for a motor vehicle purchased in North Carolina for use on Missouri highways without requiring the payment of said use tax.

The petition is in six counts for the purpose of presenting two alternative theories as to the capacity of the parties defendant and three alternative theories as to the capacity of the parties plaintiff.

The alternative theories respecting the parties defendant are: (a) that they are suable in their official capacities (Counts I, III and V); or (b) if not suable in their official capacities, they are suable in their individual capacities (Counts II, IV and VI).

The alternative theories respecting the parties plaintiff are: (a) that plaintiffs are representative plaintiffs in a true class action;

12

that is, an action where the right sought to be enforced is common to the whole class (Counts I and II); (b) that they are representative plaintiffs in a spurious class action; that is, an action where the rights are several but common relief is sought (Counts III and IV); or (c) that the named plaintiffs have several causes of action which they have joined in one suit under the permissive joinder provisions of the Civil Code of Missouri (Counts V and VI).

Other than issues going to the right of plaintiffs to maintain this action against the named defendants, the sufficiency of plaintiffs' petition is not at issue and it is not necessary to state the allegations in detail.

Plaintiffs' principal theory upon which they rely to sustain their contentions here is contained in Count I of the petition. Said count contains allegations, briefly stated, to the effect that numerous persons were forced to pay the unconstitutional use tax; that all such persons constitute a class and are so numerous it is impractical to bring all before the court; that plaintiffs sue for all persons in like situations; that they paid the use tax, which tax was thereafter held unconstitutional as aforesaid; that the State, including the defendant officers, illegally collected and received vast sums under said unconstitutional tax and delivered the same to defendant banking depository, which continues to hold the same; that the amounts so collected and from whom collected are unknown to plaintiffs but appear upon the official records of defendants and constitute a trust fund for the benefit of those from whom said tax was wrongfully exacted; that said payments were made involuntarily and under duress as the motor vehicles could not have been used on the Missouri highways without incurring civil and criminal liability; that the exaction of and defendants' failure to refund said payments constitute a deprivation of property without due process of law in violation of specified State and Federal constitutional provisions; that under § 11441, R. S. 1939 (Laws 1945, p. 1878), it is the duty of the Director of Revenue to refund said illegal exactions and of the General Assembly to appropriate funds therefor but the performance of said duties is conditioned upon a final judgment of court and a demand for refund would be futile because of said § 11441 and certain other specified statutes; that specified amounts were illegally exacted [835] from each of the named plaintiffs, in each instance less than $50, and that there are many other persons similarly situated.

The prayer of Count I seeks a judgment and decree that the State of Missouri and the defendant officials and banking depository are liable for the refund of said illegal use taxes, a judgment and decree determining the amounts due as such refunds, determining a reasonable attorneys' fee to be paid out of the total amount of said refunds to plaintiffs' attorneys, determining the amount of such fee and declaring the same a lien upon said refunds, declaring the amounts

due a trust fund and directing its payment into the registry of the court for distribution, or, if not entitled to such relief, then in the alternative directing the State Comptroller to preapprove said refunds and issue his warrant therefor, and the State Auditor, State Director of Revenue, and State Treasurer to pay and distribute said refunds and attorneys' fee, and for general relief.

Counts II, III, IV, V and VI contain the same basic allegations with only such modifications as are required to present plaintiffs' various alternative theories with respect to the parties noted above.

I. Defendants contend the circuit court did not have jurisdiction because the sum demanded did not exceed $50 for any plaintiff. § 2100, R. S. 1939. Our Constitution of 1945, so far as material, vested the judicial power of the State in the circuit courts and magistrate courts (Art. V, § 1), displacing the existing justice of the peace courts (see Ch. 11, R. S. 1939) by the magistrate courts. Under Laws 1945, p. 1079, S. B. 281, "the word 'justice' [referring to the justice of the peace] or the words 'justice of the peace' " occurring in our statutes were made "to include and refer to 'magistrate,' * * * ." Magistrates were vested with specified jurisdiction; but they had no "jurisdiction to hear and try any action involving the construction of the constitution of the United States or of this state," or "the construction of the revenue laws of this state." Laws 1945, p. 770, § 9, now § 482.100, RSMo 1949. With the foregoing statutory changes the circuit courts had "exclusive original jurisdiction in all civil cases which shall not be cognizable before * * * magistrate courts, * * * ." § 2100(2) supra, now § 478.070, RSMo 1949. The circuit court had jurisdiction of this action involving Federal and State constitutional provisions and seeking to affect the revenue of the state. Other reasons may exist for the jurisdiction of the circuit court.

II. Plaintiffs say the doctrine of sovereign immunity is archaic and should be discarded in suits for money judgments. They direct our attention to Chisholm v. Georgia (1793), 2 Dall. 419, 1 L. Ed. 440, holding that the State of Georgia could be sued in the federal courts, and the subsequent ratification in 1798 of the Eleventh Amendment to the Constitution of the United States restricting the jurisdiction of federal courts over suits against a state. They quote observations in opinions evidencing a greater liberality on the part of legislative bodies in surrendering the sovereign's immunity to suit,[1] and also refer to articles on the subject.[2]

---

[1]Kiefer & Kiefer v. Reconstruction Finance Corp., 306 U. S. 381, 390, 391, 59 S. Ct. 516, 83 L. Ed. 784; Larson v. Domestic & Foreign Commerce Corp., 337 U. S. 682, 703, 708, 69 S. Ct. 1457, 93 L. Ed. 1628; Hammond-Knowlton v. United States (C.C.A. 2d) 121 F. 2d 192, 198, 199.

[2]34 Yale L. J. 1, 129, 229; 36 Id. 1, 757, 1039; 28 Columbia L. R. 577; 25 N. Y. L. Q. R. 872; 35 Yale L. J. 150; 2 Ark. L. R. 353, 375; 59 Harvard L. R. 1060; 9 La. L. R. 291; 9 F. R. D. 143, 168.

State ex rel. S. S. Kresge Co. v. Howard, 357 Mo. 302, 208 S. W. 2d 247, is stressed by plaintiffs on several issues and we consider it here. It was a proceeding in mandamus for the payment of an appropriation for the relief of relator, a foreign corporation. The Secretary of State had refused to renew relator's authority to do business in Missouri upon relator's amendment of its articles of incorporation [836] extending its corporate duration until relator paid the domestication tax in the amount required upon an original qualification to do business here. Thereafter, in State ex rel. H. D. Lee Co., Inc., v. Bell, 355 Mo. 94, 195 S. W. 2d 492, it was held that in such circumstances foreign corporations were not required to pay the tax. The General Assembly thereupon appropriated $1,710 for the relief of relator to refund its payment of the tax. Upon the refusal of the Comptroller to certify relator's claim for payment under said appropriation, the mandamus proceeding was instituted. The court in holding the appropriation did not contravene specified constitutional provisions stated the appropriation "was in payment of a valid public obligation, and was not a grant or gift of public money." In so holding the court made some preliminary observations regarding protest, involuntary payment and duress and a more liberal view in regard thereto, which observations we think are dictum in respect to the issues of the instant case but no doubt apropos to an appropriation recognizing a natural equity for refunding money had and retained in circumstances constituting unjust enrichment. In such circumstances we perceive no reason for denying restitution under an appropriation therefor. The Kresge Co. case is not this case, as plaintiffs are not seeking the payment of an appropriation made for their relief.

The courts of this State have consistently held that the State may not be sued without its consent. Nacy v. Le Page, 341 Mo. 1039, 1041, 111 S. W. 2d 25[1], 114 A. L. R. 259; Merchants Exchange v. Knott, 212 Mo. 616, 647, 111 S. W. 565, 574; State ex rel. Highway Commission v. Bates, 317 Mo. 696, 296 S. W. 418, 420[1, 2]; Zoll v. St. Louis County, 343 Mo. 1031, 124 S. W. 2d 1168, 1173[2-4]. See, among others, Cohens v. Virginia, 6 Wheat. (19 U. S.) 264, 302(3), 307, 5 L. Ed. 257; State of Missouri v. Fiske, 290 U. S. 18, 28, 54 S. Ct. 18, 78 L. Ed. 145. The principle that the sovereign cannot be sued without its consent or permission rests upon grounds of public policy, and the law making authority is the proper body to change the public policy and authorize a suit against this State. Nacy v. Le Page, supra (111 S. W. 2d l. c. 26); Zoll v. St. Louis County, supra.

▮ III. Plaintiffs contend that by § 144.200, RSMo 1949 (formerly Laws 1945, p. 1878, § 11441), of the Sales Tax Act the State of Missouri consented to this suit. The section reads: "It shall be the duty of the General Assembly to appropriate and set aside funds

sufficient for the use of the director of revenue to make any refund of taxes required by this chapter or by final judgment of court.''

The use tax law was a part of the Sales Tax Act, being § 11412 (c, d) of 2 Laws 1947, p. 433, repealing and re-enacting § 11412, R. S. 1939, which said § 11412 of Laws 1947 now appears as §§ 144.060, 144.070, 144.440 and 144.450, RSMo 1949. State ex rel. Transport Mfg. & Eq. Co. v. Bates, supra, considered § 11412(c, d), (§§ 144.440 and 144.450, supra), unconstitutional and invalid.

Said Sales Tax Act also provides: ''* * * If any tax, penalty or interest has been paid more than once, or has been erroneously or *illegally collected,* or has been erroneously or illegally computed, such sum shall be credited on any taxes then due from the person under this article, and the balance shall be refunded to the person, but no such credit or refund shall be allowed unless duplicate copies of a claim for refund are filed within one (1) year from date of over-payment.'' (Emphasis ours.) Laws 1945, p. 1875, § 11432, now § 144.190(2), RSMo 1949:

Also: ''The circuit court * * * shall have power to review all questions of law and fact determined by the director of revenue in administering the provisions of this article, by writ of certiorari to the director of revenue. * * * Such writ of certiorari shall be commenced within thirty (30) days after a taxpayer has notice of the director of revenue's final decision in any such matter.'' § 11445, Laws 1945, p. 1878, now § 144.260, RSMo 1949.

Plaintiffs' case of Anderson v. Hayes Const. Co., 243 N. Y. 140, 153 N. E. 28, was [837] within New York statutory provisions (3 N. Y. Cons. Laws 1909, p. 2131, ch. 33, §§ 5, 42, 44, 60; 1923 Cahill's N. Y. Cons. Laws, ch. 34, §§ 5, 42, 44, 60) expressly authorizing an action in the courts against certain funds of the state. It is not authority that § 144.200, supra, authorizes the instant action in the circuit court as an original proceeding.

The majority rule is that statutes waiving the immunity of the sovereign from suit are strictly construed. State ex rel. State Highway Comm. v. Bates, 317 Mo. 696, 296 S. W. 418, 423[9, 10], and, among others, cases cited in the margin.[3]

As we view the Sales Tax Act when read as a whole, of which the use tax law was a part, it provides a method for the refund of taxes

[3] Eastern Transp. Co. v. United States, 272 U. S. 675, 686, 47 S. Ct. 289, 71 L. Ed. 472; United States v. Michel, 282 U. S. 656, 660, 51 S. Ct. 284, 75 L. Ed. 598; Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; United States v. Lindholm, 79 F. 2d 784, 787[1], 103 A. L. R. 213, 216; American Mut. Lia. Ins. Co. v. Kansas Highway Comm., 146 Kan. 239, 69 P. 2d 1091, 1094; Automobile Sales Co. v. Johnson, 174 Tenn. 438, 122 S. W. 2d 453, 455[3]; State v. Miser, 50 Ariz. 244, 72 P. 2d 408, 414; Miller v. Pillsbury, 164 Cal. 199, 128 P. 327, 328[3], Ann. Cas. 1914B, 886; Western & A. R. Co. v. Georgia, Ga., 14 L. R. A. 438, 446; Rose v. Governor, 24 Tex. 496, 504; Dunnington v. Ford, 80 Va. 177, 178; 59 C. J. 302, § 460; 49 Am. Jur. 314, § 97.

illegally collected thereunder by the filing of the required claim with the Director of Revenue, and provides for a review, if requested, of the law and facts determined by the Director of Revenue in the courts of this State upon writs of certiorari; and it is this "final judgment" to which reference is made in § 144.200 and not a judgment obtained in an original action instituted in the circuit court for such refund.

■ IV. Plaintiffs also contend that the State's consent to this suit must be implied under § 10, Art. I, Mo. Const. 1945, providing that no person shall be deprived of property without due process of law, citing State ex rel. Transport Mfg. & Eq. Co. v. Bates, 359 Mo. 1002, 224 S. W. 2d 996, and Bohannon v. Camden Bend Drainage Dist., 240 Mo. App. 492, 208 S. W. 2d 794, 801. The holding in the State ex rel. v. Bates case is stated at the beginning of this opinion. In Bohannon v. Camden Bend Drainage Dist., supra, landowners sought to restrain the construction and maintenance of a ditch and the lowering of the level of a private lake and other interference with their property and the carrying out of a certain plan of reclamation on the ground the proceedings required by law had not been complied with for the ascertainment and payment of alleged damages occasioned said landowners. The court considered that Mo. Const. 1945, Art. I, § 26, to-wit: "That private property shall not be taken or damaged for public use without just compensation," was self-enforcive and plaintiffs' petition stated a claim for relief.

Acts of officials under color of unconstitutional statutes, the statutes being null, or acts not legally authorized or which abuse the authority conferred or the failure of officials to perform a duty are not acts of the state and proceedings seeking injunctive or other proper relief under appropriate facts are considered not to be suits against the state within the principles of the immunity of the sovereign from suit. Carson v. Sullivan, 284 Mo. 353, 361(I), 223 S. W. 571[1]; Merchants Exchange v. Knott, 212 Mo. 616, 111 S. W. 565, 574; Public Service Co. v. Corboy, 250 U. S. 153, 159, 39 S. Ct. 440, 63 L. Ed. 905; Aerated Products Co. v. Department of Health, N. J., 59 F. Supp. 652, 655[1, 2], among others.

In the instant case plaintiffs seek moneys that have been placed in the State Treasury, the State's moneys whether held as owner or only as trustee of the parties from whom collected, and it is the State from whom relief is to be sought. (Consult V, infra.) The right of sovereign immunity from suit exists independent of express sanction, and it is the consent to be sued that is to be expressed in constitutional or statutory enactment or waived by [838] voluntary appearance and submission to jurisdiction. Plaintiffs' cases do not establish their contention.

■ V. Plaintiffs contend that if the State be immune from this ac-

tion, the defendant officers and banking depository should be held liable in their individual capacities.

Plaintiffs say that they do not charge the individual defendants with personal wrongdoing in discharging their official duties and, in their reply brief, that a judgment may be entered ordering payment at such time as the General Assembly makes an appropriation therefor in conformity with the promise found in § 144.200, supra. We understand plaintiffs may not have the refunds from the State in any circumstances until an appropriation therefor is made by the Legislature. 49 Am. Jur., 319, § 104, n. 19, et seq.

The petition does not allege that the payments of the use tax were made under objection or protest so the individual collector or defendant might endeavor to protect himself, although it is alleged the payments were involuntary and under duress.

The Director of Revenue was required to "promptly deposit in the State Treasury to the credit of the ordinary revenue fund" all revenue collected under the Sales Tax Act (1 Laws 1947, p. 555, § 11414; Laws 1945, p. 1875, § 11431.) The State Treasurer was to "issue his receipt therefor to the Director of Revenue" (1 Laws 1947, p. 556, §11448), and deposit the money in an approved banking depository (Mo. Const. Art. IV, § 15; § 30.240, RSMo 1949).

In George Moore Ice Cream Co. v. Rose (1933), 289 U. S. 373, 375, 376, 53 S. Ct. 620, 77 L. Ed. 1265, a collector of internal revenue was sued to recover income and profits taxes alleged to have been wrongfully collected. The court said: "1. At common law, and for many years under the federal statutes, protest at the time of payment was a condition precedent to the recovery of a tax. [Citing cases.] The rule persisted till 1924, when it was abolished by the Revenue Act of that year * * *."

Plaintiffs' case of Hammond-Knowlton v. United States (1941), C.A.A. 2d, 121 F. 2d 192, 197, was to recover an overpayment of a federal estates tax after the amendment (26 U. S. C. A. (1940), Int. Rev. Acts, 1924, p. 128, c. 234, § 1014, amending R.S. § 3226; 43 Stat. 253, 343) mentioned in the Moore Ice Cream Co. case, supra, permitting suits for the refund of any internal revenue tax wrongfully collected irrespective of whether payment was made under protest or duress. The following cases of plaintiffs disclose that the taxes involved had been paid involuntarily, under duress, and with protest. Scottish Union & Nat. Ins. Co. v. Herriott, 109 Iowa 606, 610, 80 N. W. 665, 666, 77 Am. St. Rep. 548; Dennison Mfg. Co. v. Wright, 156 Ga. 789, 793, 794, 798, 120 S. E. 120, 122, 124; Atchison, T. & S. F. R. Co. v. O'Connor, 223 U. S. 280, 285, 32 S. Ct. 216, 56 L. Ed. 436. The majority opinion in Larson v. Domestic & Foreign Corp., 337 U. S. 682, 704, 69 S. Ct. 1457, 93 L. Ed. 1628, holding, under the facts, the suit was a suit against the United States and was not to be maintained in the absence of consent, does not aid plaintiffs.

State ex rel. American Mfg. Co. v. Reynolds, 270 Mo. 589, 600(II), 194 S. W. 878, 880(II) (Mo. App., 184 S. W. 1167, 1169) (review denied, 245 U. S. 635, 650, 38 S. Ct. 189, 10, 62 L. Ed. 523, 531), was a suit against the License Collector of St. Louis, Missouri, for the refund of a State tax, held to be illegal, after the tax had been transmitted to and deposited in the state treasury. The court took judicial knowledge of the fact that the collector had transmitted and paid the tax into the state treasury, and followed Lewis County v. Tate, 10 Mo. 650, 651, which states: ''The money thus collected was paid over into the county treasury. Whatever may be the liability of the county—and of this we are not authorized to give an opinion— it is clear that the collector is not liable.'' The court also quoted statements from Mechem's Public Offices and Officers, § 649, and Cooley on Taxation (3rd Ed.) p. 1482, to the effect that a collector, who collects taxes, although by compulsion, under color of law and pays the taxes over to the proper receiving officer, is protected and is not responsible in instances where his authority [839] was void for un-constitutionality or other reasons. The court remarked: ''To hold a collector responsible individually would be a harsh rule, and one which we do not care to follow. The Legislature, upon proper ap-plication, would no doubt reimburse the plaintiff from the state treasury.'' Elliott v. Swartwout, 10 Pet. (35 U. S. 137, 153(2), 9 L. Ed. 373, is to like effect.

''When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is en-titled to invoke its sovereign immunity from suit even though in-dividual officials are nominal defendants.'' Ford Motor Co. v. Treasury Department of Indiana, 323 U. S. 459, 464, 65 S. Ct. 347, 89 L. Ed. 389. Kennecott Copper Corp. v. State Tax Comm., 327 U. S. 573, 577, 66 S. Ct. 745, 90 L. Ed. 862; Automobile Sales Co. v. Johnson, 174 Tenn. 38, 122 S. W. 2d 453, 454[1, 2], 120 A. L. R. 370.

We have developed supra that the State is not to be sued without its consent and the consent to be sued is strictly construed.

We rule the issue against plaintiffs. The interpretation of the use tax law was open to plaintiffs as well as defendants and each is pre-sumed to have knowledge of its validity or unconstitutionality. Plain-tiffs did not test its validity. Judgments against defendants as in-dividuals, who are innocent of wrong doing, should not be encouraged. Their official duty was to administer the law and not to pass on its legality, its enactment by the Legislature carrying a presumption of its validity. State ex rel. Thompson v. Jones, 328 Mo. 267, 41 S. W. 2d 393, 396[1, 2]; State ex rel. Missouri & N. Ark. R. Co. v. Johnson, 234 Mo. 338, 350(IV), 137 S. W. 595, 598(IV); State ex rel. State Board of Mediation v. Pigg, 362 Mo. 798, 244 S. W. 2d 75, 78 [1, 4]. It is more in accord with justice that the many persons paying the use tax, who did not question its validity before payment, should

suffer the loss (which Missouri legislative history indicates will not occur) of an inconsiderable sum, than that officials who perform their duty in collecting and remitting the tax to the state should be compelled to pay the aggregate sum collected after the law is held unconstitutional. See also 43 Am. Jur. p. 126, § 326, p. 97, § 284, n. 9, p. 99, § 288, nn. 16, 17.

VI. The Sales Tax Act provides for the refund of taxes illegally collected thereunder when claims therefor are filed within one year from the date of payment. § 144.190, RSMo 1949. The Director of Revenue is in charge of the Department of Revenue of this State and the collection of the revenue (Mo. Const. Art. IV, § 22; Chs. 32, 136, RSMo 1949), including the sales tax, which Sales Tax Act is to be administered by said Director (Ch. 144, Id.) The act contemplates the filing of the claim with the Director of Revenue. §§ 144.190, 144.260; State ex rel. St. Louis Shipbuilding & Steel Co. v. Smith, 356 Mo. 25, 201 S. W. 2d 153, 155.

Plaintiffs say these statutory provisions for refund are not exclusive because the use tax law was unconstitutional, citing Ogden City v. Armstrong, 168 U. S. 224, 240, 18 S. Ct. 98, 42 L. Ed. 444. The facts distinguish the cases. In the Ogden City case the taxing authority exceeded its jurisdiction and the whole tax proceedings were absolutely void, the suit being to restrain the levy of a special assessment and recovery of payments made under protest after the suit had been filed. Armstrong v. Ogden City, 12 Utah 476, 43 P. 119, 121. The instant action is one against the State, and State ex rel. Transport Mfg. & Eq. Co. v. Bates, 359 Mo. 1002, 224 S. W. 2d 996, considered the Legislature had power to enact a use tax but the use tax provisions were unconstitutional on account of a certain exemption. This holding did not affect the provisions of the Sales Tax Act providing a method for the refund of taxes illegally collected. The word "overpayment" in § 144.190 (quoted under III, supra) includes taxes "illegally collected" as well as the other payments mentioned in the section.

Plaintiffs also say the statutory remedy is not exclusive as they had a common law right of action to recover, citing State ex rel. Kresge Co. v. Howard, [840] 357 Mo. 302, 208 S. W. 2d 247, 250[6], and Security Nat. Bk. v. Young (C. C. A. 8th), 55 F. 2d 616, 618[2, 3]. The Kresge Co. case was not a suit against the State for the recovery of money, but to compel the payment of an appropriation, a ministerial act, and we think the statutory remedy available for a refund of a tax paid under the Sales Tax Act and deposited in the State Treasury is exclusive until some other method is legally made available. In the Security Nat. Bk. case the tax was paid under protest but not involuntarily and under duress. The complaint was dismissed. The court considered the limitation of thirty days in which to institute suit for the recovery of taxes paid under protest to a treasurer au-

thorized to collect the same unreasonable and unconstitutional and the statute void. Six months was considered a valid limitation in Reid v. Solar Corp., 69 F. Supp. 626, 639. But we are dealing with a matter of governmental grace and not an ordinary statute of limitations. Absent legislation authorizing the refund of illegally collected taxes, the enforcement of a refund against the State may not be had, and as our statute requires the assertion of the claim within one year, this limitation is a condition to the existence of the right conferred. Automobile Sales Co. v. Johnson, 174 Tenn. 38, 122 S. W. 2d 453, 458[6, 7], 120 A. L. R. 370; Re Appalachian Publishers, Inc., 29 F. Supp. 1021, 1022[3, 4]. See Higgins v. Heine Boiler Co., 328 Mo. 493, 41 S. W. 2d 565, 571.

There is no merit in plaintiffs' contention that § 144.190, is unconstitutional as being in contravention of Mo. Const., Art. IV, § 28, placing restrictions upon the withdrawal of money from the State Treasury except in accordance with an appropriation made by law, et cetera. Section 144.200 contemplates an appropriation sufficient to make the required refunds, and our Session Acts disclose that the Legislature has been making appropriations therefor. See, for instance, Laws 1949, p. 198, § 10.310, and pending H. B. 196, 66th General Assembly, § 10.270, tenders an appropriation of $200,000 to the Director of Revenue for refunding payments of use taxes.

We are unable to hold the statutory remedy does not afford an expeditious method for the refund of taxes wrongfully collected under the Sales Tax Act and conclude that plaintiffs' contention that § 144.190 does not constitute a fair and adequate remedy is not well taken.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.