THE STATE ex rel. ROY H. MONIER et al., Members of State Tax Commission, v. JOHN M. CRAWFORD, Assessor of Buchanan County.

In Banc, May 13, 1924.

1. **INCOME TAX: State Tax Commission: Power to Compel Assessor to Produce Returns.** The State Tax Commission has no power to

inspect income tax returns on file in the office of a county assessor, or to compel the assessor to produce such returns for examination, or to institute proceedings to compel taxpayers to comply with the State Income Tax Law.

2. **STATUTORY CONSTRUCTION: General and Special Acts.** Two acts *in pari materia*, passed at the same session of the General Assembly, are to be so construed that both can stand if reasonable construction will so permit; but a special act is not repealed by one of general nature, and if there is irreconcilable repugnancy between them the special act prevails, and if a special provision applicable to a particular subject is inconsistent with even a later general law the special provision will prevail.

3. ———: ———: **Tax Commission Act: Income Tax Law: Inspection of Tax Returns.** The several paragraphs of Section 12847, Revised Statutes 1919, relating to the powers of the State Tax Commission, contain numerous and repeated and specific reference to the assessment and taxation of property, but no reference at all to the assessment and collection of income taxes, and to construe them to authorize the commission to inspect income tax returns on file in the county assessor's office or to institute suits to compel true and correct returns, would bring said section in direct conflict with Section 13135, which forbids the inspection of income tax returns in the clearest and most positive terms, and is a part of the Income Tax Law, enacted at the same session of the General Assembly, as a special act applicable to the assessment and taxation of incomes alone.

Headnotes 1 and 3: Taxation, 37 Cyc. 811 (1926 Anno). Headnote 2: Statutes, 36 Cyc. 1087, 1151.

## Mandamus.

ALTERNATIVE WRIT QUASHED.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for relators.

(1) Statutes *in pari materia* are those which relate to the same person or thing, or to the same class of persons or things. The acts creating the State Tax Commission and providing for assessing and collecting

income tax relate to same subject-matter, namely, taxation and revenue, and should be interpreted together. 36 Cyc. 1147; State ex rel. v. Clark, 54 Mo. 218; State ex rel. v. Klein, 116 Mo. 267; State ex rel. v. Slover, 126 Mo. 659; Grimes v. Reynolds, 184 Mo. 688; Glaser v. Rothchild, 221 Mo. 209; Gasconade County v. Gordon, 241 Mo. 582; Long v. Callaway, 68 Mo. App. 296; City of Springfield v. Starke, 93 Mo. App. 76; Black on Interpretation of Laws (2 Ed.) p. 332. (2) This rule is particularly applicable to revenue and taxation acts. 36 Cyc. 1149; Black on Interpretation of Laws (2 Ed.) p. 335; Hannibal and St. Joseph Railroad Co. v. Schacklett, 30 Mo. 556; Ross v. Railway Co., 111 Mo. 26; State v. Ebbs, 89 Mo. App. 98; United States v. Collier, 25 Fed. Cases (Case No. 14833) 530; The Viola, 59 Fed. 635; Ketcham, Admx. v. Hill, 42 Ind. 723. (3) It is presumed that statutes passed at the same session of the Legislature, as these here in question were, are imbued with the same spirit and actuated with the same policy. 36 Cyc. 1151; State ex rel. v. Clark, 54 Mo. 218; State ex rel. v. Patterson, 207 Mo. 144; Gasconade County v. Gordon, 241 Mo. 582; Curtwright v. Crow, 44 Mo. App. 568. (4) The two acts deal with the one subject of taxation and revenue and the two together are designed to constitute a complete system wherein the always troublesome question of assessment and taxation may be made more simple, adequate, equitable and efficient. (5) A statute must be construed with reference to the system of which it is a part. City of St. Louis v. Howard, 119 Mo. 45; State ex rel. v. Patterson, 207 Mo. 144; Sales v. Barber Asphalt Paving Co., 166 Mo. 678; Gasconade County v. Gordon, 241 Mo. 582; Black on Interpretation of Laws (2 Ed.) p. 332. (6) Statutes should not be given a construction that would render them unreasonable and absurd. This would result if the view of respondent were adopted in this case. Lumber Co. v. Railroad, 216 Mo. 672.

*Culver, Phillip & Voorhees* for respondent.

(1)   The Commission has only such authority as is conferred upon it by the express language of the statute, and such as is necessarily implied from the powers expressly conferred.   If there is any provision in either article expressly conferring such authority, relators have failed to point it out, and we have failed to find it.   Nor is there any provision in either article from which such power is necessarily implied.   Article 4, creating the Commission and defining its powers, became a law April 9, 1917, Laws 1917, p. 552.   At that time there was no such thing known in the law of this State as an Income Tax Law.   The law creating such tax, now Art. 19, R. S. 1919, was not approved until April 12, 1917, and did not become effective until June 18, 1917, Laws 1917, pp. 538, 591.   It is true that both acts were passed at the same session of the Legislature, but that fact cannot change the further fact that the law creating the Commission and defining its powers, could not by necessary implication confer any power upon the Commission with respect to the enforcement of an act creating a tax upon incomes which had not become a law.   To rule otherwise is to say that the Legislature knew, when it passed the law creating the Tax Commission, not only that a bill creating the income tax would inevitably receive the approval of both Senate and House, but that it would also inevitably receive the approval of the Governor, which was necessary to give it life.

(2)   Article 4, taken as a whole, shows upon its face that the control or supervision which the Legislature intended the Commission should exercise over the assessors in this State was only with respect to the assessment of taxes upon property, and not with respect to the assessment of the tax upon income.   The tax upon income in this State is not a tax upon property.   Wire Company v. Wollbrinck, 275 Mo. 339.   And the Legislature itself recognized that the income tax is not a property tax, when it expressly provided that the returns made for income tax should not be used in connection with or for

the purpose of assessing a "property tax." R. S. 1919, sec. 13125. Section 12847 is absolutely inconsistent with the provisions of Article 19 providing for the taxation of income, because the commission has nothing to do with the review or correction of an assessment of an income tax, that duty being reposed by the income tax law upon other offices. Section 13135 under the severe penalties therein prescribed, prohibits any assessor from permitting "any other person or persons not connected with his office to see, inspect or examine" any income tax report. The Tax Commission has no connection whatever with the office of the county assessor. The only business of the Tax Commission is with respect to the assessment of a property tax; and Section 13125 expressly provides that the income tax return cannot be used "for the purpose of assessing property tax."

JAMES T. BLAIR, J.—This is a proceeding by the State Tax Commission to compel the Assessor of Buchanan County to produce the state income tax returns on file in his office and permit them to be inspected by S. H. Smith, who is alleged to be an agent appointed by the Commission and directed by it "to confer with the various assessing officers of the State concerning their administration of the State Income Tax Law and examine the income tax returns filed in" respondent's office and "to institute proper proceedings to enforce the penalties and liabilities provided by law for public officers, officers of corporations and individuals failing to comply with the State Income Tax Law."

The question involved is one of statutory construction. Relators contend they are authorized to empower an agent to inspect and examine the returns in question and to require these to be delivered by respondent to such agent for inspection. Respondent insists the law gives relators no such power, but expressly prohibits the examination of such returns by anyone except designated persons, and that relators' agent is not among those so designated.

The Act of 1917 (Laws 1917, pp. 542-552) which first established the State Tax Commission (hereafter referred to as the Commission) was signed and took effect on April 9, 1917. At this time there was no law in this State which authorized the taxation of incomes. The State Income Tax Act (Laws 1917, pp. 524-538) was approved on April 12, 1917, and did not take effect until July 11, 1917. The act establishing and governing the Commission now appears as Article IV of Chapter 119, Sections 12828-12852, Revised Statutes 1919, unamended since its passage. Respondent's position is that Article IV clearly shows that the powers of the Commission relate solely to property taxes. Those powers are, in the main, conferred by Section 12847. It reads as follows:

"Sec. 12847. *Authority of Commission—general supervision over assessments, etc.* It shall be the duty of the commission, and the commissioners shall have power and authority, subject to the right of the state board of equalization, finally to adjust and equalize the values of real and personal property among the several counties of the state, as follows:

"(1) To have and exercise general supervision over all the assessing officers of this State, over county boards of equalization and appeal in the performance of their duties, and to take such measures as will secure the enforcement of the provisions of this article, and all the properties of this State liable to assessment for taxation shall be placed upon the assessment rolls and assessed in accordance with the letter and plain provisions of the law.

"(2) To confer with and advise assessing officers as to their duties under this article and all other laws concerning revenue and taxation, and to institute proper proceedings to enforce the penalties and liabilities provided by law for public officers, officers of corporations and individuals failing to comply with the provisions of this article or of the revenue and taxation laws. In the

execution of these powers the said commission shall call upon the attorney-general, or any prosecuting or circuit attorney in the State, to assist this commission in the enforcement of laws with the supervision of which this commission is charged, and when so called upon it shall be the duty of the attorney-general, and the prosecuting (or circuit attorneys in their respective counties), to assist in the commencement and prosecutions of actions and proceedings for penalties, forfeitures, removals and punishments for violation of the laws in respect to the assessment and taxation of property, and to represent the commission in any litigation which it may wish to institute or in which it may become involved in the discharge of its duties.

"(3) To receive all complaints as to property liable to taxation that has not been assessed, or that has been fraudulently or improperly assessed, to investigate the same and to institute such proceedings as will correct the irregularity complained of, if any irregularity be found to exist.

"(4) To require from any officer in this State, on forms prescribed by the commission, such annual or other reports as shall enable said commission to ascertain the assessed and equalized value of all property listed for taxation, the amount of taxes assessed, collected and returned, and such other matter as the commission may require, to the end that it may have complete information concerning the entire subject of revenue and taxation and all matters and things incidental thereto.

"(5) To furnish the state board of equalization at each session thereof a statement of the value of the taxable property in each county in the State, and, when so requested, to meet with the state board of equalization. The said statement herein referred to shall include a statement of the amount to be added to or deducted from the valuation of the real and personal property of each county, specifying the amount to be added to or be deducted from the valuation of the real or personal prop-

erty, to the end that the state board of equalization may adjust and equalize the valuation of real and personal property among the several counties in the State as is provided by law.

"(6)   The commission shall have the exclusive power of original assessment of railroads, railroad cars, rolling stock, street railroads, bridges, telegraph, telephone, express companies, and other similar public utility corporations, companies and firms now possessed and exercised by the state board of equalization.   Said commission shall also have all powers of original assessment of real and personal property now possessed by any assessing officer, subject only to the rights given by the Constitution to the state board of equalization.

"(7)   To cause to be placed upon the assessment rolls omitted property which may be discovered to have, for any reason, escaped assessment and taxation, and to correct any errors that may be found on the assessment rolls and to cause the proper entry to be made thereon.

"(8)   To raise or lower the assessed valuation of any real or personal property, including the power to raise or lower assessed valuation of the real or personal property of any individual, copartnership, company, association or corporation:   *Provided,* that before any such assessment is so raised, notice of the intention of the commission to raise such assessed valuation and of the time and place at which a hearing thereon will be held, shall be given to such individual, copartnership, company, association or corporation as provided in section 12848.

"(9)   At least one member of the commission, or some duly authorized representative, shall officially visit the several counties of this State at least once in two years and inquire into the methods of assessment and taxation and ascertain whether assessing and revenue officers are faithfully discharging their duties as required by law and are diligent in enforcing the revenue laws.

"(10)   To investigate the tax laws of other states and countries, to formulate and submit to the Legislature such recommendations as the commission may deem expedient to prevent evasions of the assessment and taxing laws, whether the tax is specific or general, to secure just, equal and uniform taxes, and improve the system of assessment and taxation in this State.

"(11)   To consult and confer with the governor and the state board of equalization upon the subject of taxation, the administration of the laws in regard thereto, the progress of the work of the commission, and to furnish from time to time such assistance and information as may be required relating to tax matters.

"(12)   To transmit to the Legislature, on or before the first day of February of each odd numbered year, a report of the work of the commission for the preceding biennial period, showing all the taxable property in the State and the value of the same in tabulated form. This report shall give a complete account of the progress of the work of the commission and shall be printed. At least one thousand copies thereof shall be distributed to officers and others interested in just, equal and uniform taxation.

"(13)   To prescribe the form of all blanks and books that are used by the various revenue officers of this State.

"(14)   The commission is empowered to call a group meeting of two or more assessors at such time and place as it may designate, due notice of which shall be given by the commission: *Provided,* in counties under township organization the commission shall call a meeting of the township assessors at the county seat of said county at which meeting a representative of the commission shall be present; *and provided further,* the township assessors shall receive no compensation other than their necessary expenses in attending said meeting. For attending such meetings assessors shall be allowed a *per diem* of five dollars for the time actually spent, including

coming to and returning from such meeting, and their railroad fare necessarily spent in going to and returning from said annual meeting. When such claims are verified by oath and approved by the commission, or any member thereof, they shall be presented to the county court, or other taxing officers, and when duly audited a warrant in payment shall be issued and paid out of any funds belonging to the county or other municipal subdivision which such assessor officially serves.''

The introductory sentence of this section is not inconsistent with either relators' or respondent's interpretation of the act. It merely recognizes the constitutional authority of the State Board of Equalization. An examination of the several paragraphs of this section discloses such numerous and repeated and specific references to the assessment and taxation of property and such a complete absence of all specific reference to the assessment and collection of income taxes that it seems quite clear that the act was drafted with property taxes alone in mind. There is no foundation for the claim that the article empowers the Commission to do what it seeks to have done in this case unless that power is derived from general language several times used in the section, or unless, as relators contend, it must be construed with the Income Tax Law because the two were passed at the same legislative session, and by that process, in some way, given a breadth which will cover income assessment and taxation. The general language referred to cannot be construed to destroy specific contrary provisions in the later act, nor will the fact that the two acts are passed at the same session prevent the later from repealing and modifying the former if they are in irreconcilable conflict. When two acts *in pari materia* are passed at the same session they are to be construed so that both can stand if reasonable construction will permit. Nevertheless, if there is irreconcilable repugnancy, the later act prevails. [State ex rel. v. Heidorn, 74 Mo. 410, 412; Lang v. Calloway, 68 Mo. App.

l. c. 396.] Further, a special act is not to be held repealed by one of general nature, even of *later* enactment, in the absence of negative words or unless an irreconcilable inconsistency is necessarily raised. [State ex rel. M. & M. Railroad Co. v. County Court, 41 Mo. 453.] And if a special provision applicable to a particular object be inconsistent with even a later general law, the special provision will prevail. [State v. Green, 87 Mo. 583.]

As has been suggested, there is no language in the Tax Commission Act, either in the section quoted or any other, which purports to apply it specifically to the taxation of incomes. The words used throughout are done no violence when they are held to be in harmony with the construction that the Legislature, in passing the Commission Act, intended it to apply solely to property taxes. If, however, it be construed to apply to the taxation of incomes, it is at once brought into immediate and direct conflict with important provisions of the *later special* act which deals solely with the taxation of incomes, as plainly appears from a consideration of the later act. For instance, Section 13135, Revised Statutes 1919, diectly forbids the inspection of income tax returns in the clearest and most positive language. It reads thus:

"It shall be unlawful for any person, persons or officer to divulge, give out or impart to any other person or persons any information relative to or the contents of any income filed under this article, or to permit any other person or persons *not connected with his office* to see, inspect or examine the same; and it shall be unlawful for any person or officer to use any income filed under this in any manner whatever in connection with, or for the purpose of assessing of property tax or determining the amount of assessment of any person or corporation or to use the same in any way in making up an assessment roll. It shall be unlawful for any board of equalization, or any member thereof, or any officer, to in any way permit the inspection of any such return or

to use the same in any way in making assessment other than the assessment of the tax provided in this article, and any person violating the provisions of this section shall be deemed guilty of a felony and upon conviction thereof shall be fined a sum not less than $100 and not more than $1000, or by imprisonment in the penitentiary for a term of not less than two years and not more than five years, or both, . . . as the court may deem proper; and any officer convicted of the violation of this section, the judgment of conviction shall be construed and held to be a forfeiture of the office of such convicted person.''

The assessor receives the returns of income taxpayers, assesses the taxes thereon and is made the custodian of the returns until he destroys them, as the statute provides he shall do. Special authority is given the State Auditor, in case he believes an assessor has assessed income taxes fraudulently, collusively or erroneously, to apply to the circuit court for the appointment of a competent person to reassess the taxes, which is then to be done. These provisions indicate a policy separate from the revisory features with respect to property taxes, and further support the view that the income tax law is not intended to be construed as relators construe it. However, with respect to the section just quoted, the conflict between it and the Commission Act, construed as relators construe it, is plain and the repugnancy irreconcilable. To permit relators to inspect the returns in the face of the section is, of necessity, to hold that a *previous general* act repeals important provisions of a *later special* act, and that though it is plain a reasonable construction can be given the previous act which will avoid the conflict, and though the acts are *in pari materia* and passed at the same legislative session and both are to stand if reasonable construction can accomplish it, yet we will refuse to observe the well-known canons which crowd in on this state of facts and will give the Commission Act a construction which brings it into

irreconcilable conflict with the Income Tax Act and hold that act is in several respects repealed. This would amount to an abandonment of many well settled rules of construction and of a long line of authorities demonstrating their soundness. This question cannot be ruled that way.

The alternative writ is quashed. All concur.