The GAS SERVICE COMPANY,
a corporation, Appellant,

v.

M. E. MORRIS, individually and as Director of Revenue of Missouri, Warren E. Hearnes, individually and as Secretary of State of Missouri, Milton Carpenter, individually and as State Treasurer of Missouri, Haskell Holman, individually and as State Auditor of Missouri, and John W. Schwada, individually and as State Comptroller of Missouri, Respondents.

No. 48577.

Supreme Court of Missouri,

Division No. 1.

Feb. 12, 1962.

Kyle D. Williams, Jefferson City, John B. Gage, John H. Kreamer, Laird P. Bowman, Kansas City (Gage, Hodges, Moore, Park & Kreamer, Kansas City, of counsel), for appellant.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld, Asst. Atty. Gen., for respondents.

COIL, Commissioner.

The Gas Service Company has appealed from a judgment dismissing its action against the Missouri Director of Revenue, Secretary of State, Treasurer, Auditor, and Comptroller, both in their official capacities and as individuals. Appellant company sought to recover the sum of $17,490 as the amount of domestication tax which allegedly had been illegally assessed against and collected and withheld from the company.

Company's petition alleged in substance: that about January 1, 1959, the then secretary of state, purportedly under the provisions of section 351.595(2),[1] requested the payment by company of an additional domestication tax in an amount indicated by an affidavit to be filed showing the value of company's property in Missouri and the proportion of company's stated capital and surplus represented by its property located in Missouri; that company filed the affidavit and tendered the sum of $85 as additional domestication tax due; that the tendered amount was returned by the secretary of state with the advice that the tax due amounted to $17,575 and that unless it was paid within sixty days company's authority to transact business in Missouri would be forfeited; that company thereafter paid the tax by a check marked "Paid Under Protest," which was delivered to the director of revenue accompanied by a letter of protest as to the amount assessed in excess of $85; that company filed a claim for refund with the director of revenue pursuant to the provisions of section 136.035 and the claim was denied.

1. All section citations refer to sections in RSMo 1959 and V.A.M.S. unless otherwise indicated.

Company's petition averred further: that the additional domestication tax (in excess of $85) assessed and collected apparently was based upon a provision of section 351.-595(2), supra, providing that the base for the assessment of the tax should, in no event, be less than the value of the corporation's property located in Missouri; that Missouri domestic corporations are required to pay an additional organizational tax only in the event of an increase in their authorized shares and are not required to pay an amount based upon the increased value of their property located in Missouri; that company's authority to transact business in Missouri was granted in 1926, at which time it paid all proper taxes and fees and complied with all the conditions for its entry into this state, among which was the condition that any domestication tax was to be calculated upon the same basis as for domestic corporations and that such right of equality of treatment thereby became and was a vested contract right; that, consequently, the assessment and collection of a tax based upon an increase in the value of plaintiff's property located in Missouri was unconstitutional in that it impaired the obligation of contract between company and the State of Missouri and denied company the equal protection of the laws of Missouri; and further, that the provisions of section 351.-595(2), supra, were inapplicable to company by virtue of the provisions of section 351.-695, providing that the rights, privileges, immunities, and franchises vested or accrued under the provisions of any law prior to the enactment of chapter 351 should not be impaired or diminished or affected thereby or by the repeal of any such prior law.

Company alleged further: that by reason of the above-stated averments $17,490 of the tax was wrongfully assessed, collected, and had been wrongfully diverted to the "general use of the State of Missouri" and that company was entitled to a judgment against the named persons in their respective official capacities and as individuals in the sum of $17,490 with interest thereon;

that plaintiff had exhausted its administrative remedies; that the judgment should direct the comptroller to approve the refund and certify the claim and that the auditor, treasurer, director of revenue and secretary of state should pay over the refund to the company. A copy of the claim for refund filed with the director of revenue was attached to the petition and essentially set forth company's position as reflected by the above-stated averments of its petition.

Respondents' (defendants') motion to dismiss contained the grounds that the petition failed to state a claim upon which relief could be granted; that the action against the named defendants in their official capacities was in reality a suit against the state and that the state had not consented to be sued in an action such as company's present one; and that the petition failed to state a claim for relief against any of the defendants individually. As noted, that motion to dismiss was sustained.

Company's first contention on this appeal is that the amount of the additional domestication tax (in excess of $85) was illegally and unconstitutionally assessed and collected for the reasons alleged in its petition. We do not reach that question because, in our view, for the reasons hereinafter set forth, the company could not maintain this action against defendants in either their official or individual capacities.

■ Company does not concede but assumes *arguendo* that its action, in so far as it sought relief against named defendants in their official capacities, was actually a suit against the State of Missouri, although company has suggested no reason why the assumption is not true. Inasmuch as the averments of the petition compel the conclusion that the money collected as additional domestication tax was paid into the coffers of the State of Missouri, and inasmuch as the judgment sought against defendants in their official capacities could be satisfied only from money in the state treasury, it seems apparent that the relief

sought is against the state. Under such circumstances it is clear and we so hold that in so far as the petition attempts to state an action against the named defendants in their respective official capacities, the action is one against the State of Missouri. Kleban v. Morris, 363 Mo. 7, 247 S.W.2d 832, 837(6–8), 839(9).

■ Company contends, however, that even if the action in the respect noted is against the state and even if the well-settled proposition that the state may not be sued without its express consent is applicable, the state has consented to be sued in this action for money had and received. We have the opinion that company's position is untenable and that its contention has been ruled adversely to it in Kleban v. Morris, supra.

We have heretofore noted that company filed a claim for refund under the provisions of section 136.035, supra. That section provides in part:

"1. The director of revenue from funds appropriated, shall refund any overpayment or erroneous payment of any tax which the state is authorized to collect. The general assembly shall appropriate and set aside funds sufficient for the use of the director of revenue to make refunds authorized by this section or by final judgment of court. * * *

"3. No refund shall be made by the director of revenue unless a claim for refund has been filed with him within two years from the date of payment. Every claim must be in writing under oath and must state the specific grounds upon which the claim is founded."

Company contends that the words contained in the above statute, "by final judgment of court," considered in connection with the fact that the word "shall" is used in the first sentence above-quoted, and that the statute applies by its terms to *any* tax, are tantamount to an express consent by the state to be sued in this action. Those same words, i. e., "by final judgment of court," were construed in Kleban v. Morris, supra, in connection with a similar contention there made by appellant. The Kleban case was to recover use taxes assessed and collected under a law which was subsequently declared unconstitutional. The use tax law was part of the Sales Tax Act and that act provided in part (section 144.200): "It shall be the duty of the general assembly to appropriate and set aside funds sufficient for the use of the director of revenue to make any refund of taxes required by this chapter or by final judgment of court." The court in the Kleban case pointed out that the Sales Tax Act also provided (section 144.190(2)) that any tax illegally collected should be refunded provided a claim for refund was filed within one year and provided (section 144.260) that a circuit court had power to review all questions of law and fact determined by the director of revenue in administering the provisions of the act on writ of certiorari commenced within thirty days after notice of director's final decision in any such matter. The court, at 247 S.W.2d 837, after pointing out that statutes waiving immunity of the sovereign from suit are strictly construed, held that the "final judgment" referred to in section 144.200, supra, of the Sales Tax Act was a final judgment obtained in the pursuit of the remedy provided by the act, viz., a claim for refund and judicial review thereof, and that such language did not refer to a "final judgment" obtained in an original action such as the one there for the recovery of the taxes illegally collected.

In the present case, company's claim for refund from the director of revenue under section 136.035 was denied. Section 138.430 provides in part: "Any person, firm or corporation shall have the right to appeal to the state tax commission from any finding, order, decision, assessment or additional assessment made by the director of revenue, or by the state collector of revenue, under such rules and regulations as said commission shall prescribe. The state tax commission shall have authority to affirm, modify

or reverse any such finding, order, decision, assessment or additional assessment which is found to be unlawful, unfair, improper, arbitrary or capricious."

It seems, therefore, that as in Kleban v. Morris, supra, with respect to the language of section 144.200, so in this case, the words of section 136.035, "by final judgment of court," probably refer to a final judgment obtained in a proceeding authorized by statute for the review of the director of revenue's administrative decision by an appeal to the state tax commission under section 138.430 and thereafter judicial review under the provisions of Civil Rules 100.03 to 100.07, V.A.M.R. Furthermore, however, in the light of the established rule that statutes which are said to waive the immunity of the sovereign to suit are to be strictly construed, no reason appears which would cause us to hold that the language of section 136.035, even in the absence of the foregoing explanation of the words "by final judgment of court," constituted a clear and explicit consent on the part of the state to be sued for the refund of illegally collected taxes by a common-law action for money had and received. The language, unexplained, constitutes an ambiguous reference but does not constitute a clear and unequivocal consent by the state to be sued in the present action.

Company contends further, however, that even in the absence of a consent it is entitled to maintain this action against the state. In our judgment, that precise contention has been ruled adversely to the company in Kleban v. Morris, supra. In that case it was said (247 S.W.2d 836, 839, 840): "The courts of this State have consistently held that the State may not be sued without its consent. Nacy v. Page, 341 Mo. 1039, 1041, 111 S.W.2d 25(1), 114 A.L.R. 259; Merchants Exchange [of St. Louis] v. Knott, 212 Mo. 616, 647, 111 S.W. 565, 574; State ex rel. Highway Commission v. Bates, 317 Mo. 696, 296 S.W. 418, 420(1, 2); Zoll v. St. Louis County, 343 Mo. 1031, 124

S.W.2d 1168, 1173(2-4). See, among others, Cohens v. Virginia, 6 Wheat. 264, 302 (3), 307, 19 U.S. 264, 302(3), 307, 5 L.Ed. 257; State of Missouri v. Fiske, 290 U.S. 18, 28, 54 S.Ct. 18, 78 L.Ed. 145. The principle that the sovereign cannot be sued without its consent or permission rests upon grounds of public policy and the law making authority is the proper body to change the public policy and authorize a suit against this State. Nacy v. Le Page, supra, 111 S.W.2d loc. cit. 26; Zoll v. St. Louis County, supra. * * *

"Plaintiffs also say the statutory remedy is not exclusive as they had a common law right of action to recover, citing State ex rel. S. S. Kresge Co. v. Howard, 357 Mo. 302, 208 S.W.2d 247, 250(6), and Security Nat. Bk. v. Young, 8 Cir., 55 F.2d 616, 618 (2, 3), [84 A.L.R. 100]. The Kresge Co. case was not a suit against the State for the recovery of money, but to compel the payment of an appropriation, a ministerial act, and we think the statutory remedy available for a refund of a tax paid under the Sales Tax Act and deposited in the State Treasury is exclusive until some other method is legally made available. * * * Absent legislation authorizing the refund of illegally collected taxes, the enforcement of a refund against the State may not be had, * * *.'"

To support its contention to the contrary, company cites Atchison, Topeka & Santa Fe Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, and American Mfg. Co. v. City of St. Louis, Mo., 192 S.W. 399. In the O'Connor case, an action was brought in the United States Circuit Court for the District of Colorado against the Colorado tax collector who, it was alleged, collected and retained the money. Whatever the significance of the opinion in that case may be, it is clear that it did not decide any question respecting the right of this state to invoke its sovereign immunity in its own courts. The American Manufacturing Company case, supra, was not an action against the state or against a state official but was against the City of St.

Louis, and no question of the state's immunity to suit was there involved.

Appellant next contends that even if, contrary to its contention but as we have held, it may not maintain a common-law action for money had and received against the state, its petition, liberally construed, should be considered an action for judicial review of the administrative decision of the director of revenue denying its claim for refund under the provisions of Civil Rule 100.08 (section 536.105). C.R. 100.08 provides for the judicial review of administrative decisions in noncontested cases which are not subject to administrative review.

Respondents contend that the decision of the director of revenue denying appellant's claim for refund was subject to administrative review in that the appeal provisions of section 138.430 of the 1945 Tax Commission Act were applicable and required that appellant appeal the director's decision denying its claim for refund to the state tax commission. Section 138.430 provides:

"1. Any person, firm or corporation shall have the right to appeal to the state tax commission from any finding, order, decision, assessment or additional assessment made by the director of revenue, or by the state collector of revenue, under such rules and regulations as said commission shall prescribe. The state tax commission shall have authority to affirm, modify or reverse any such finding, order, decision, assessment or additional assessment which is found to be unlawful, unfair, improper, arbitrary or capricious.

"2. Every owner of real property or tangible personal property and every merchant and manufacturer shall have the right of appeal from the local boards of equalization under rules prescribed by the state tax commission. Said commission shall investigate all such appeals and shall correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious."

Appellant contends the foregoing provisions were not applicable to a decision of the director of revenue denying a claim for refund of a domestication tax theretofore paid because, says appellant, a reasonable and proper construction of the above section makes it plain that it was the intent of the general assembly that paragraph one above was to apply only to findings, orders, decisions, assessments, or additional assessments made by the director of revenue or the state collector of revenue *in matters dealing solely with property taxation.* Appellant argues that such a meaning and intent is plain from the context in which the section appears, "as well as from its relation to other parts of the taxing structure and from its history." In support, appellant suggests that if the section is read in the form in which it was enacted rather than in the form as it now appears in the statute by reason of its placement by the committee on legislative research, the fact that it relates only to property taxation will be made abundantly clear; and appellant relies upon the banc case of State ex rel. Monier v. Crawford, 303 Mo. 652, 262 S.W. 341, to which we shall hereinafter again refer.

Respondents contend that the language of the section in question (138.430) is plain and unambiguous and cannot "be misunderstood or explained away"; that when the statute says "any finding, order, decision, assessment or additional assessment made by the director of revenue, or by the state collector of revenue," it means just what it says and thereby grants power to the state tax commission to affirm, reverse, or modify *any* such finding, order or decision and not *solely* property tax decisions.

The Tax Commission Act, present sections 138.190–138.490 inclusive, was first enacted in 1917. Laws 1917, p. 542. That act established for the first time a state tax commission. In its original form or as it was revised prior to 1945, it contained no section like or similar to present section 138.430. That section was added to the Tax Commission Act as an entirely new

provision by the 63rd General Assembly. Laws 1945, pp. 1805, 1812. The 1945 Tax Commission Act was enacted as reperfected House Committee Substitute for House Bill 528 as amended by Senate Committee Amendment No. 4. H.B. 528 as originally presented did not contain any of the provisions of present section 138.430. A provision relating to the right of appeal to the state tax commission was added in the House Committee Substitute. The substitute bill provided for the right of appeal "from any assessment or additional assessment made by the director of revenue." Senate Committee Amendment No. 4 provided for an appeal to the state tax commission "from any *finding, order, decision,* assessment or additional assessment made by the director of revenue *or by the state collector of revenue.*" (The amendment added the words italicized above.) House Journal, 63rd General Assembly, Vol. II, pp. 2281, 2329, 2330.

The 1945 Tax Commission Act created within the new department of revenue (Laws 1945, p. 1430) a "commission to be known and designated as the State Tax Commission. The Director of Revenue shall have no supervision, authority or control over such actions or decisions of the State Tax Commission as relates to its duties prescribed by law." Laws 1945, p. 1806. Prior to 1945, there was no such official as a director of revenue; nor was there a state collector of revenue. Inasmuch as the section with which we are here concerned (138.430) was first enacted in 1945, and inasmuch as the references in that section to the acts of the director of revenue and of the state collector of revenue could not have referred to the findings, orders, decisions, assessments, or additional assessments which either of those officials historically or traditionally had theretofore made, it is apparent that the legislature necessarily referred to the director's or the collector's findings, orders, decisions, assessments, and additional assessments which were to be made in the future, either by power conferred in the Tax Commission Act itself, in other laws enacted at the same (1945) session of the legislature, or in laws enacted at subsequent sessions.

There was no provision in the 1945 Tax Commission Act referring to any finding, order, decision, assessment, or additional assessment to be made either by the director or the collector of revenue. We have examined all of the other laws enacted by the 63rd General Assembly under the title "Taxation and Revenue" to determine whether, and if so what, references are contained therein to the findings, orders, decisions, assessments, or additional assessments of the director or of the collector of revenue.

The Sales Tax Act, as revised in 1945, Laws 1945, p. 1865, provided that the director of revenue could make "an additional assessment of tax," giving written notice thereof and designating a time and place where the taxpayer might be heard on a petition for reassessment. It was further provided that the circuit court of the county of the taxpayer's residence or business location was to review all questions of law and fact determined by the director of revenue in administering the Sales Tax Act by an action instituted within thirty days after notice of the director's final decision.

Appellant argues that the foregoing provisions of the Sales Tax Act makes it apparent that the legislature did not·intend that the appeal provisions of section 138.-430 would apply to the director's decisions as to sales tax because of the specific provisions for other review noted above. Appellant correctly asserts that this fact, standing alone, tends to support its contention that the legislature intended to deal only with matters relating to property tax when it inserted the appeal provision of section 138.430.

The Income Tax Act, as revised in 1945, Laws 1945, p. 1881, provided that the director of revenue could make an "assessment or additional assessment" and send the taxpayer notice thereof; that the taxpayer might petition for an abatement or cor-

rection within thirty days after notice whereupon the director would fix a hearing date; and that "Any taxpayer under the terms of this act shall have the right to appeal to the State Tax Commission from any final decision by the Director of Revenue regarding abatements, corrections or reassessments," and that the determination of the amount of the tax was the "final decision" of the director from the time of service of such determination and that the proceedings for appeal to the state tax commission should be as "provided by law" for appeals to said board.

An income tax is not a property tax; it is in the nature of an excise tax, General American Life Ins. Co. v. Bates, Mo., 249 S.W.2d 458, 462(4); and thus appellant concedes that the Income Tax Act as revised in 1945 provided for an appeal to the state tax commission from a decision of the director of revenue in a matter other than one involving property tax; but, says appellant, the legislature apparently did not believe that the appeal provisions of section 138.430 covered the income tax appeal, else it would not have included the specific provision for appeal to the state tax commission in the revised Income Tax Act. Appellant says that if both appeal provisions were applicable they were in conflict. We do not so read the two sections. On the contrary, it seems to us that the appeal provisions of section 138.430 and the appeal provisions of the Income Tax Act, Laws 1945, p. 1898, were not in conflict or repugnant but were harmonious. It seems reasonable to suppose that when the legislature provided in the Income Tax Act for an appeal to the state tax commission and stated that the proceedings for appeal be "as provided by law for appeals to said Board," it specifically referred to the appeal provisions in section 138.430.

The law providing for a property tax on intangible personal property, Laws 1945, p. 1914, provided that if the taxpayer failed to make a return or made an insufficient one, the director of revenue should make an "assessment or additional assessment of such intangible property" and notify the taxpayer of such; that the taxpayer could apply in writing for a hearing before the director of revenue and could appeal to the state tax commission "as provided by law." The intangible personal property tax, while a "property" tax, was not a tax which had been traditionally or historically within the jurisdiction of the state tax commission.

The laws enacted in 1945 relating to the taxation of banks, Laws 1945, p. 1921, and relating to credit institutions, Laws 1945, p. 1937, each contained provisions that in the event the director of revenue determined that a taxpayer owed more tax than returned, the director was to so notify the taxpayer, fix a time and place for hearing, and, as a result, the director was to make "such order" as may be lawful, and provided further that the taxpayer had the right to appeal from such order "as provided by law." It would seem that "as provided by law" in those two instances either referred to the appeal provisions of section 138.430, or to the review provisions of the Administrative Procedure and Review Act as enacted in 1945. Laws 1945, p. 1504.

As we have noted, the provisions of section 138.430 provided for an appeal to the state tax commission from any finding, decision, order, assessment, or additional assessment made by the state collector of revenue, as well as by the director of revenue, and, as we have also noted heretofore, the state collector was a new official position. Senate Committee Substitute for Senate Bill 297, Laws 1945, p. 1428, created the department of revenue and provided that it would be in the charge of a director of revenue and that a state collector of revenue was to head the department's division of collection. Laws 1945, p. 1432. Section 9 of the Department of Revenue Act, Laws 1945, p. 1433, specifically provided that the division of collection which was headed by the state collector of revenue was to collect all taxes, licenses, and fees payable to the state "except that county and township collectors shall collect the state tax on tangible property." Thus, the legislature pro-

vided at the same session at which it enacted the appeal provisions of present section 138.430 that the state collector of revenue was not to collect state taxes on tangible property. It seems unlikely that the legislature in giving one a right of appeal to the state tax commission from any decision of the state collector intended to confine that right to the collector's decisions involving "property" taxes, when, at the same time, the legislature had eliminated the collection of tangible property taxes from the sphere of the state collector's duties.

We have reviewed in some detail the provisions of the tax laws enacted at the same session of the legislature at which the provisions of the Tax Commission Act in question were enacted to determine whether we may thereby find some clear indication that the legislature intended by the language used in section 138.430 to refer to decisions, orders, etc., of the director and collector of revenue relating solely to property tax matters. We find no provisions in such laws, when considered as a whole, which indicate any such an intent, even though it may be that such acts do not indicate with certainty the legislature's intent.

Nor do we read the provisions of present section 138.430 any differently when that section is viewed, as it now appears, in a more logical position than it occupied in H. C.S.H.B. 528. It is true that when enacted, the appeal provisions (now section 138.430) were illogically included between paragraphs detailing unrelated duties of the tax commission. Laws 1945, pp. 1810–1814. We are unable to discern, however, how that fact supports the argument that the legislature thereby indicated that it intended the new section to refer only to actions of the director and collector which related solely to property tax matters.

As stated heretofore, appellant relies upon the banc case of State ex rel. Monier v. Crawford, 303 Mo. 652, 262 S.W. 341. That case construed the 1917 Act establishing the state tax commission, then section 12852 RSMo 1919. No provision similar to pres-

ent section 138.430 was included or construed. The sole question was whether, under the provisions of the act as it then existed, an authorized agent of the state tax commission could examine and inspect income tax returns and require their delivery for such inspection. The court held that because of the act's numerous and specific references to property taxation and because of the absence of any reference to income taxes, the act had been drafted with property taxes alone in mind. The basis for that conclusion was that the only possible premise for the contention that the tax commission had the power to inspect income tax returns was the general language in the Tax Commission Act that the commission had supervision over the assessing officers in the state. The income tax law, however, enacted later at the same session of the legislature, specifically forbade the inspection of income tax returns. The court held that the general language of the Tax Commission Act should not be so construed as to destroy the specific contrary provisions in the later act; that the fact that the two laws were enacted at the same session was of no consequence when they were in irreconcilable conflict, but that the specific provisions of the income tax law would prevail over the general language of the Tax Commission Act. The court pointed out, however, that if the Tax Commission Act were construed to apply solely to property taxes, it was in harmony with the later specific provisions of the Income Tax Act, while if it were construed otherwise it would be in direct conflict with the later act which directly forbade the commission to inspect income tax returns in clear and positive language. The Monier case clearly is not authority under the facts here, where we are construing an entirely new provision of the Tax Commission Act which in specific language provides for appeals from any decision, not limited to decisions in property tax matters only. It may well be that the legislature was fully aware of the fact that it was not so limiting paragraph one of the section; for in paragraph two, supra, it provided for appeals from local boards of

equalization by owners of "real property or tangible personal property," while in paragraph one it included no reference to "property."

■ In view of all the foregoing, we are of the opinion that there is no justification for inferring or concluding that the legislature meant to say anything other than the ordinary meaning of the words it used in section 138.430 would indicate it did say. Thus we are relegated to the applicable rule that in seeking the legislative intent we should ascribe to the language used its plain and rational meaning. Marty v. State Tax Commission, Mo., 336 S.W.2d 696, 699(1, 2).

■■ We therefore hold that the legislature's language that "Any person, firm, or corporation shall have the right to appeal to the state tax commission from any finding, order, decision, assessment or additional assessment made by the director of revenue, or by the state collector of revenue, under such rules and regulations as said commission shall prescribe," was meant to include any such finding, decision, etc., made in any matter relating to taxation, and that the legislature did not intend to limit the section's provisions in paragraph one to decisions, etc., relating only to matters involving property taxes. It follows that the director's decision denying appellant's claim for refund was administratively reviewable by an appeal to the state tax commission and that the tax commission's decision was judicially reviewable under the provisions of C.R. 100.03–100.07, both inclusive.

■ Appellant contends further that even if, as we have held above, it could have appealed the director's decision to the state tax commission under the provisions of section 138.430, such would have been a vain and useless procedure and was not essential as a condition precedent to judicial review, because the state tax commission as an administrative body had no power to decide constitutional questions which, says appellant, were the only questions for decision. In the first place, the allegations of appellant's petition indicate that at least in part appellant contended that the provisions of the section under which the domestication tax was allegedly assessed were inapplicable to it. Consequently, it seems apparent that the administrative agency on review might well have reversed the decision of the director of revenue without deciding any constitutional question and perhaps thereby obviating any necessity for such a decision. Be that as it may, however, sufficient to answer to appellant's above-stated contention is that as heretofore noted C.R. 100.08 (section 536.105) provides for the judicial review of administrative decisions in non-contested cases *which are not subject to administrative review*. The rule in that respect states, "When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review," etc. We have held that the decision of the director of revenue was subject to administrative review by the state tax commission under the provisions of section 138.430. Thus, appellant was not entitled to a judicial review of the director's decision under the provisions of C.R. 100.08. Appellant does not contend that its petition in this case should be considered one for review of a "contested case" under the provisions of C.R. 100.03–100.07. One sufficient reason why it could not be so considered is that C.R. 100.04 requires that the petition for review shall be filed in the circuit court within thirty days after the mailing or delivery of the notice of the agency's final decision. It is conceded that the appellant's action herein was not instituted for at least fifty days after it received notice that its claim for refund had been denied.

■ Furthermore, it should be observed that, in any event, the question whether appellant must have appealed from the director's decision to the state tax commission involves more in this case than the considerations involved in usual questions pertaining to the necessity for the exhaustion of administrative remedies. Here,

there is a further applicable principle which arises by reason of the assertion by the state of its immunity from suit. The legislature here provided for the taxpayer a procedure to recover a tax illegally collected and to that extent the state consented to be sued. Rogers v. Holmes, 214 Ore. 687, 332 P.2d 608, 611(1, 2). When a state consents to be sued, it may be proceeded against only in the manner and to the extent provided by the statute; and the state may prescribe the procedure to be followed and such other terms and conditions as it sees fit. State ex rel. Leggett v. Jensen, Mo., 318 S.W.2d 353, 359; Kleban v. Morris, supra, 247 S.W.2d 840; American Steel & Wire Co. of New Jersey v. State, 49 Wash.2d 419, 302 P.2d 207, 210(6, 7); Land Holding Corp. v. Board of Finance & Revenue, 388 Pa. 61, 130 A.2d 700, 703(1–3); Executive Air Service v. Division of Fisheries & Game, Mass., 173 N.E.2d 614, 615(1, 2). Thus, if as in the present instance the only method and procedure provided for the recovery of illegally collected taxes was through the media of administrative agencies and the judicial review of their decisions, the state's consent to be sued was conditional upon the pursuance of those procedures as the taxpayers' exclusive remedy. Great American Ins. Co. v. Gold, 254 N.C. 168, 118 S.E.2d 792, 795(2); Kleban v. Morris, supra, 247 S.W.2d 840.

█ We are of the opinion that company's final contention that it has stated a claim against named defendants individually is wholly without merit. Again, the case of Kleban v. Morris, supra, 247 S.W.2d 838, 839, has decided that issue adversely to company's contention. The Kleban opinion cited and quoted from State ex rel. American Mfg. Co. v. Reynolds, 270 Mo. 589, 194 S.W. 878. In the Reynolds case, the court said, at page 881: "In the collection of this tax the collector in the one case was the agent for the city and in the other the agent for the state. In this kind of a situation, we think the rule announced in Lewis County v. Tate, 10 Mo. [650] loc. cit. 651, is applicable. It is there said:

" 'The money thus collected was paid over into the county treasury. Whatever may be the liability of the county—and of this we are not authorized to give any opinion— it is clear that the collector is not liable. Where money is paid to an agent, for the purpose of being paid over to his principal, and is actually paid over, no suit will lie against the agent to recover it back.'

"In Mechem's Public Offices and Officers, § 649, it is said:

" 'Where money illegally collected by color of law still remains in the hands of the collector, it may be recovered from him by the party paying it, but if it has been paid over by the collector to the proper authorities, he is no longer responsible for it, though it appears that he acted under an authority which was void.'

"In Cooley on Taxation (3d Ed.) p. 1482, it is further said:

" 'But in general, if the money, though actually collected by compulsion, is paid over to the proper receiving officer before suit brought, the collector is protected, and this principle has been applied to cases in which the officer's authority was void for unconstitutionality or other reason.'

"This rule is supported by many cases found cited under the text, and we think it the safe rule. Of course, if the money had been in the hands of the collector at the institution of the suit, a different rule might have applied. But it had long since reached the state treasury. To hold a collector responsible individually would be a harsh rule, and one which we do not care to follow. The Legislature, upon proper application, would, no doubt, reimburse the plaintiff from the state treasury."

In the present case, as we have stated heretofore, it is apparent from company's averments that the tax in question "had long since reached the state treasury" and we adhere to the rule, under the circumstances here, that named defendants are not individually liable, irrespective of

whether the tax in question was illegally collected.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.