FILED 69
Mr. James L. Wilson, Director Department of Natural Resources P. O. Box 176 Jefferson City, Missouri 65101
Dear Mr. Wilson:
This opinion is in response to your request that we answer the following question:
 "1. May a city or county which holds a certificate of authority granted by the Missouri Air Conservation Commission pursuant to Section 203.140, RSMo Supp. 1973, require that a permit or other approval be obtained from such city or county before the State may construct an air contaminant source within the boundaries of that city or county?"
We understand that the specific factual situation which prompted your request is the construction at the St. Louis State Hospital, a state-owned facility, of a new boiler and attendant equipment which will be used for generation of heat and power for the hospital. The operation of this boiler will result in the emission of certain gases and particulate matter which fall within the definition of "air contaminant" found in Section 203.020, RSMo Supp. 1973.
The City of St. Louis was granted a certificate of authority by the Missouri Air Conservation Commission, pursuant to Section203.140, RSMo Supp. 1973. Under the certificate, the city may operate its own permit system for air contaminant sources. Section203.140. Your question is whether the city's permit system can be enforced against (applied to) state property which is used in such a way that air contaminants are emitted therefrom.
We initially note that the city's air pollution ordinances do not speak in terms of air contaminant sources, as does Section 203.075, the state permit requirement. However, Ordinance No. 50163, Section 18, requires a permit before constructing or altering any fuel-burning plants or devices or chimneys connected therewith. We understand the boiler in question at the St. Louis State Hospital to be such a fuel-burning plant.
The answer to your question basically involves a determination whether the state has waived its sovereign immunity with respect to a state hospital which constructs an air contaminant source within the city. Section 203.075 provides that:
 "1. It shall be unlawful for any person to commence construction of any air contaminant source in this state after August 13, 1972, without a permit therefor, . . ."
Section 203.020(13) defines "person" to include any "agency, board or bureau" of the state government. We conclude from the language of Section 203.075 and from the definition of person, that the legislature intended that state agencies would have to obtain permits before constructing air contaminant sources. The essential question is whether the legislature also intended, by Section 203.140, to subject state facilities to the city's permit process.
As a general rule, the state, in the ownership of its property, is not subject to a local ordinance unless the state waives its right to regulate its property. Paulus v. City of St. Louis,446 S.W.2d 144 (St.L. Ct.App. 1969). In that case the court held that the city could not require the state (through its contractor) to obtain a building permit prior to constructing part of the St. Louis State Hospital. However, the court in Paulus recognized that a city could impose its regulatory ordinances on state property if the state so agreed.
We are also aware that statutes waiving the state's sovereign immunity will be strictly construed. Cf. Gas Service Company v.Morris, 353 S.W.2d 645 (Mo. 1962). However, in seeking legislative intent, we should ascribe to the statutory language its plain and rational meaning. Id. We believe that the language of Section203.140, taken with the requirement under Section 203.075 that state-owned air contaminant sources obtain a permit, requires the conclusion that the legislature intended that state-owned facilities in a city holding a certificate of authority be subject to such city's permit requirements.
Section 203.140 provides that any charter city or county and any first or second class city or county may apply to the Commission for a certificate of authority to operate its own permit procedure within its boundaries. Section 203.140 goes on to provide that the city or county may issue permits, subject to the requirements of Sections 203.075 and others, and also subject to the rules and regulations of the Commission. Section 203.140 further provides that a permit issued by a city or county holding a certificate of authority shall serve as a permit granted by the Commission.
A fair reading of Section 203.140 leads us to conclude that the legislature intended that a city or county holding a certificate of authority could operate a permit system substantially equivalent to the permit system required by Section 203.075. As state agencies are required to obtain permits under the latter section, we believe the legislature intended, where a state agency constructs an air contaminant source located within a city or county holding a certificate of authority, that the agency obtain a permit from such city or county. We believe that such intention, as expressed in Section 203.140, constitutes a limited waiver of sovereign immunity of the state.
CONCLUSION
It is the opinion of this office that a city or county which holds a certificate of authority granted by the Missouri Air Conservation Commission pursuant to Section 203.140, RSMo Supp. 1973, may require that a permit or other approval be obtained from such city or county before a state agency may construct an air contaminant source within the boundaries of that city or county.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Dan Summers.
Yours very truly,
 JOHN C. DANFORTH Attorney General